UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re<br><br>MINH VU HOANG and<br>THANH HOANG<br><br>        Debtors.<br>—————————————<br>GARY A. ROSEN, Chapter 7 Trustee for<br>   Minh Vu Hoang and Thanh Hoang<br><br>        Appellant,<br><br>     v.<br><br>DAVID DAHAN e al.,<br><br>        Appellees. | Civil Action No. DKC 11-2320 |

**Brief for Appellant**

Richard H. Gordin, No. 02634
Max Maccoby, No. 16653
Neal Goldfarb, No. 05396
BUTZEL LONG TIGHE PATTON, PLLC
1747 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
T: (202) 454-2800 ▪ F: (202) 454-2805
rgordin@butzeltp.com
mmaccoby@butzeltp.com
ngoldfarb@butzeltp.com

Roger Schlossberg, No. 02021
SCHLOSSBERG & ASSOCIATES
134 West Washington St.
P.O. Box 4227
Hagerstown, MD 21741
T: (301) 739-8610 ▪ F: (301) 791-6302
rschlossberg@schlosslaw.com

*Counsel for Plaintiff*

# Contents

Contents .................................................................................................................. i

Table of Authorities........................................................................................... ii

Introduction.........................................................................................................1

Question Presented.............................................................................................2

Statement of the Case.........................................................................................3

    A.  Minh Vu Hoang's asset-concealment scheme........................................3

    B.  The bankruptcy filing and Minh Vu Hoang's concealment of the
sham entities and of the assets in their names...........................................4

    C.  The defendants' knowledge of Hoang's bankruptcy and their
participation with Hoang in concealing estate assets.................................4

    D.  The First Amended Complaint.................................................................5

    E.  The Motion to Dismiss and the Bankruptcy Court's Decision ...............6

Argument .............................................................................................................7

    A.  *Deckelbaum* was wrongly decided because § 542(a) is not limited
to estate property in the defendants' possession, custody, or control
when the petition was filed. .......................................................................7

        1.  Deckelbaum is inconsistent with § 542(a)'s text. ...........................8

        2.  Section § 542(a)'s legislative history of confirms that a trustee
may recover under § 542(a) where the property was acquired
by the defendant post-petition........................................................10

        3.  The cases that Deckelbaum relied on were either inapposite,
distinguishable, or incorrectly decided. ........................................11

        4.  Deckelbaum's policy analysis was mistaken. .................................15

    B.  Even if *Deckelbaum*'s holding were correct, it would not apply
here because the counts at issue allege that the Dahan defendants
acquired property of the estate as conduits, not transferees...................17

Conclusion ........................................................................................................18

# Table of Authorities

**Cases**

*In re 31-33 Corp.*, 100 B.R. 744 (Bankr. E.D. Penn. 1989) ............................................. 12

*In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712 (6th Cir. 1992) ................................. 14

*Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988) ............................................................................................. 14

*Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) ............................................ 15

*In re Columbia Data Products, Inc.*, 892 F.2d 26 (4th Cir. 1989) ................................. 14

*Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 275 B.R. 737 (D. Md. 2001) ...................................................................................... passim

*Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956 (11th Cir. 2001) ................................................................................................. 2

*Garcia v. Gomez*, 534 F.3d 1320 (10th Cir. 2008) ...................................................... 2

*Miller v. Lane*, 167 B.R. 729 (Bankr. E.D. Mass. 1981) ............................................. 13

*In re Mushroom Transp. Co., Inc.*, 382 F.3d 325 (3d Cir. 2004) ............................. 13, 16

*In re Southeast Hotel Properties L.P.*, 99 F.3d 151 (4th Cir. 1996) ................................. 14

*In re USA Diversified Prods., Inc.*, 100 F.3d 53 (7th Cir. 1996) ................................. 15

*Vogel v. Russell Transfer, Inc.*, 852 F.2d 797 ............................................................ 12

**Statutes**

11 U.S.C.:

§ 101(54) ............................................................................................ 14

§ 362(b)(1) ........................................................................................... 9

§ 363 ..................................................................................................... 9

§ 522 .................................................................................................. 9, 10

§ 541(a)(3) ............................................................................................ 9

§ 541(a)(4) ............................................................................................ 9

§ 541(a)(5) ............................................................................................ 9

§ 541(a)(6) ............................................................................................ 9

§ 541(a)(7) ............................................................................................ 9

§ 542 .............................................................................................. passim

§ 542(a) ........................................................................................................... pssim

§ 546 ................................................................................................................13

§ 547 ................................................................................................................12

§ 547(b)(4) .......................................................................................................12

§ 549 .............................................................................. 11, 13, 14, 15, 16, 17

§ 549(d) ......................................................................................................13, 16

28 U.S.C. § 158(a)(3) ...........................................................................................7

## Legislative Materials

H.R. 8200, 95th Cong., § 542(a) (Feb. 8, 1978)................................................10

S. 2266, 95th Cong., § 542(a) (Oct. 31, 1977) .................................................10

H.R. Rep. No. 95-595, 95th Cong., 1st Sess. (Sept. 7, 1977), 1978 U.S.C.C.A.N. 5963
    1977 WL 9628 ...........................................................................................11, 12

S. Rep. No. 95-989, 95th Cong., 2d Sess. (July 14, 1978), 1978 U.S.C.C.A.N. 5787,
    1978 WL 8531 ...........................................................................................11, 12

124 Cong. Rec. H11047, H11060 (daily ed. Sept. 28, 1978) .........................10

124 Cong. Rec. H11096–97 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards).....................11

124 Cong. Rec. S17403, S17413 (daily ed. Oct. 6, 1978)................................10

124 Cong. Rec. S17413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini)............................11

## Miscellaneous

Thomas E. Plank, *The Outer Boundaries of the Bankruptcy Estate*, 47 Emory L.J.
    1193 (1998).....................................................................................................10

**Introduction**

In the bankruptcy-court decision at issue in this interlocutory appeal, the bankruptcy judge followed a 2001 decision by another judge of this Court in a different case, but plainly regarded that decision as mistaken. The bankruptcy court's opinion sets out several reasons why the earlier decision—*Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*[1]— is incorrect, including the fact that the decision conflicts with the text and the legislative history of the relevant statutory provision. Having granted the plaintiff leave to appeal, this Court should reverse the bankruptcy court's decision—and thereby reach the result that the bankruptcy court itself plainly regards as correct.

In the order from which this appeal is taken, the bankruptcy court dismissed six counts in an adversary proceeding. Each of those counts was based on 11 U.S.C. § 542, which requires that property belonging to a bankruptcy estate be turned over to the bankruptcy trustee. In dismissing these counts, the bankruptcy court followed *Deckelbaum*, which had held that § 542 does not apply to cases in which the defendant received property of the estate after the bankruptcy case was filed.

However, the bankruptcy court made clear that if it "were writing on a clean slate, it might well reach a different result."[2]  The opinion strongly suggests that *Deckelbaum* is inconsistent with § 542's text, and notes that "the legislative history seems clear" that Congress intended the provision to apply to cases where the defendant received the estate property after the petition was filed. The bankruptcy court also found fault with the

---

1.  275 B.R. 737 (D. Md. 2001).

2.  Mem. of Decision at 7 (Bankr. Dkt. 29; Attachment 1 hereto).

Dahan defendants' arguments. Significantly, the court said not a word in support of *Deckelbaum*'s conclusion or reasoning.

Despite the bankruptcy court's views on the merits, it followed *Deckelbaum*, presumably because it thought it would be inappropriate for a bankruptcy judge not to follow a decision by a district judge in the same district. But this Court need have no such reluctance; it is clear beyond doubt that a district judge is not bound by the decision of another district judge in the same district.[3]

It is equally clear that *Deckelbaum* was wrongly decided. And even if that were not the case, its holding, when narrowly construed in light of the court's reasoning, does not extend to the counts that are at issue on this appeal. For these reasons, the bankruptcy court's decision should be reversed.

## Question Presented

Section 542 of the Bankruptcy Code provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The questions presented are

(1) whether this provision applies when the property at issue is acquired by the defendant after the bankruptcy has commenced, and

(2) whether, assuming this provision applies when the property at issue is transferred to the defendant by the debtor after the bankruptcy has commenced, it

---

3.  *E.g.*, *Garcia v. Gomez*, 534 F.3d 1320, 1329 (10th Cir. 2008); *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co.*, 240 F.3d 956, 965 (11th Cir. 2001).

also applies when the property is acquired by the defendant post-petition and the defendant acquired the property on behalf of the debtor rather than as a transferee.

### Statement of the Case

This adversary proceeding was commenced by Gary Rosen in his capacity as Chapter 7 trustee for debtors Minh Vu Hoang and her husband Thanh Hoang. The First Amended Complaint (Attachment 2 hereto) alleges that the after these debtors filed for bankruptcy, defendants David Dahan, Karin Dahan, Sarit Dahan, Maia LLC, Raymonde LLC, and Rokama LLC ("the Dahan Defendants") assisted Minh Vu Hoang in concealing from Rosen and the bankruptcy court property that belonged to the estate. In the counts at issue in this appeal, Rosen asserted claims under Bankruptcy Code § 542 (quoted above in the Question Presented). Rosen sought to require the Dahan Defendants to account to the estate for the value of the estate assets that they received on Minh Vu Hoang's brhalf.

### A.   Minh Vu Hoang's asset-concealment scheme.

Before she filed for bankruptcy, Minh Vu Hoang was in the business of buying distressed real estate at foreclosure and selling it at a profit. (First Am. Compl. ¶ 33.[4]) Beginning at least as early as 1998, she undertook a complex and wide-ranging scheme to conceal her assets from creditors. (¶ 34.)

Minh Vu Hoang used a variety of methods in carrying out her scheme, of which one is especially relevant to this appeal. When purchasing real property, she often caused the property to be titled in the name of a sham entity or of another nominee. (¶ 38.) She used more than 200 such sham entities, many of which were supposedly general partner-

---

4.   All subsequent citations to paragraph numbers without any further identification are to the First Amended Complaint, as are all references to "the complaint."

ships. (¶ 39.) However, the purported partnerships were, in economic substance, merely names under which Minh Vu Hoang did business as a sole proprietor. (¶ 40.) The complaint alleges that the sham entities are and always have been instrumentalities and alter egos of Minh Vu Hoang, and have never had any separate existence. (¶ 51.)

As part of this scheme, Minh Vu Hoang created sham partnership agreements or caused such sham agreements to be created. (¶ 41.) These purported agreements were not intended to have any legal effect, but were manufactured for the purpose of creating a false and misleading paper record ostensibly showing that the purported partnerships in whose name Minh Vu Hoang's properties were titled really existed. (*Id.*)

**B.   The bankruptcy filing and Minh Vu Hoang's concealment of the sham entities and of the assets in their names**

Minh Vu Hoang filed for bankruptcy under Chapter 11 on May 10, 2005, and she filed her schedules about two weeks later on May 27. (¶¶ 59–60.) Her schedules and Statement of Financial Affairs failed to disclose any ownership interest in any of the properties or sham entities that are at issue in this case, or in any of the other sham entities that Minh Vu Hoang used in buying and selling real estate. (¶ 60.)

Plaintiff Rosen was appointed as Chapter 11 Trustee in Minh Vu Hoang's bankruptcy on August 31, 2005. (¶ 61.) The case was subsequently converted to Chapter 7 and Rosen was appointed as Chapter 7 Trustee. (¶ *Id.*)

**C.   The defendants' knowledge of Hoang's bankruptcy and their participation with Hoang in concealing estate assets**

Defendants David Dahan and Karin Dahan (David's daughter) learned of Hoang's bankruptcy no later than April 7, 2006, when they contracted with Rosen to buy certain real property from the estate. (¶¶ 64–68.) At that time, and at all relevant times thereafter,

David Dahan was a member and/or employee and/or agent of Maia, LLC; Rokama, LLC; and Raymonde, LLC, and his knowledge of the bankruptcy is imputed to those entities. (¶¶ 69–71.)

After learning that Hoang was in bankruptcy, David Dahan acted in concert with her to help her conceal her assets. (¶¶ 72–81.) Hoang gave David Dahan a variety of instructions in connection with this endeavor, which he carried out. For example:

- Hoang instructed David Dahan to create Maia, LLC, which he then used as the vehicle through which much of the money at issue in this complaint was funneled as part of Hoang's scheme to hide her assets from the Trustee. David Dahan opened a bank account in Maia's name, which he used in whole or in part for the benefit of Hoang. (¶ 74.)

- Hoang instructed David Dahan to use a home-equity line of credit in his name for her benefit, by drawing funds on the line of credit and giving them to her or otherwise using them as she instructed. (¶ 75.)

- Hoang gave David Dahan written instructions about checks she wanted him to write, and wire transfers she wanted him to send. (¶¶ 76–78.)

- On several occasions, David Dahan applied for loans on properties that were in the name of Maia, LLC. Some or all of the funds deposited into that account were not connected to Maia. Hoang used the account and caused David Dahan to sign checks that were used for other properties. (¶ 79.)

**D.  The First Amended Complaint**

This complaint sets out nine sets of counts, numbered 1A–1C, 2A–2C, and so forth. Each set of counts relates to a particular piece of real property that was purchased

using assets belonging to Hoang's bankruptcy estate. The motion to dismiss deals only

with the first six sets of counts, which involve the following properties:

| | |
|---|---|
| Counts 1A–1C | 3119 Parkway, Cheverly, MD |
| Counts 2A–2D | 6304 Kenhowe Drive, Bethesda, MD |
| Counts 3A–3C | 13416 Sherwood Forest Drive, Bethesda, MD |
| Counts 4A–4C | 7654 Bay Street, Pasadena, MD |
| Counts 5A–5C | 6700 Sundown Rd., Gaithersburg, MD |
| Counts 6A–6B | 11819 Milbern Dr., Potomac, MD |

Each of these sets of counts follows the same basic pattern: First, real property

was purchased (post-petition) using funds that were property of Minh Vu Hoang's

bankruptcy estate, and title was taken in the name of one of Minh Vu Hoang's sham

entities. Because the properties were bought using estate assets, the properties themselves

were estate assets. Second, the property was sold or refinanced. The proceeds of the sale

or refinancing constituted estate assets. Third, the proceeds were distributed in whole or

in part to one or more of the Dahan Defendants, who received them as agents or

nominees for Minh Vu Hoang. The Dahan Defendants therefore acted as conduits or

intermediaries with respect to the proceeds.

The counts at issue here—Counts 1A, 2A, 3A, 4A, 5A, and 6A—assert claims

under § 542(a). They allege that the Dahan Defendants came into possession, custody, or

control of property of the estate, that they were obligated to turn that property over to

Rosen as trustee, and that they failed to do so.

## E.   The Motion to Dismiss and the Bankruptcy Court's Decision

The Dahan Defendants moved to dismiss the counts at issue here on the ground

that § 542(a) does not apply in cases where, as here, the defendant is alleged to have

received property of the estate after the bankruptcy petition was filed.[5] This argument

---

5.   Bankr. Dkt. 17, 18.

was based on *Deckelbaum*, which the defendants argued was binding on the bankruptcy court because it had been decided by a judge of this Court. Rosen argued in response that *Deckelbaum* did not bind the bankruptcy court and that it was wrongly decided.[6]

The bankruptcy court followed *Deckelbaum* (with apparent reluctance) and dismissed Counts 1A, 2A, 3A, 4A, 5A, and 6A. In doing so, it took the unusual step of saying that that if it "were writing on a clean slate, it might well reach a different result."[7] The bankruptcy court stated several reasons for thinking that *Deckelbaum* had reached the wrong conclusion, including the fact that *Deckelbaum*'s holding was inconsistent both with § 542(a)'s plain meaning and with its legislative history. The court also discussed several Dahan Defendants' arguments critically, offering reasons for concluding that those arguments were unfounded.

Rosen filed a timely motion for leave to appeal under 28 U.S.C. § 158(a)(3), which the Dahan Defendants did not oppose.[8] That motion was granted on August 26, 2011 and the notice of appeal that had been submitted along with the motion was filed on the same day.[9]

## Argument

### A.  *Deckelbaum* was wrongly decided because § 542(a) is not limited to estate property in the defendants' possession, custody, or control when the petition was filed.

*Deckelbaum* was mistaken in holding that § 542 does not apply to cases where the defendant received property of the estate after the bankruptcy petition was filed.

---

6.  Bankr. Dkt. 23.

7.  Mem. of Decision at 7 (Bankr. Dkt. 29; Attachment 1 hereto).

8.  Bankr. Dkt. 35, 37.

9.  D. Ct. Dkt. 3; Bankr. Dkt. 49.

*Deckelbaum*'s holding is inconsistent with the statutory text and the legislative history, and that inconsistency becomes even clearer when § 542 is read together with other sections of the Bankruptcy Code that § 542 refers to. The cases that *Deckelbaum* relied on are either inapposite or wrongly decided or both. Finally, *Deckelbaum* erred in its policy analysis—both because a judge's views about good policy cannot trump clear Congressional intent and because the analysis was based on false assumptions.

### 1.   Deckelbaum *is inconsistent with § 542(a)'s text.*

**a.** *Deckelbaum*'s holding that § 542(a) applies only to property obtained by the defendant prepetition is inconsistent with the provision's plain language. Section 542(a) provides that the duty to turn over property of the estate applies to anyone who is in possession, custody, or control of such property "during the case[.]"[10] As the bankruptcy court recognized, "the plain language of § 542 does not limit its application to recovery of property that is in a defendant's possession only as of the petition date."[11] The phrase "during the case" is not ambiguous and cannot reasonably be understood to mean "when the petition was filed."

The court further noted (correctly) that "[t]he specific application of the section to property that is in the possession, custody or control of a defendant 'during the case' would seem contrary to a determination that it only applies to pre-petition transfers."[12] Under *Deckelbaum*'s interpretation of § 542(a) as applying only to property obtained pre-petition, the phrase "during the case" is superfluous. As the bankruptcy court explained,

---

10. 11 U.S.C. § 542(a).

11. Mem. of Decision at 7 (Bankr. Dkt. 29; Attachment 1 hereto).

12. *Id.*

"if § 542(a) is read to require that the defendant must be in possession as of the petition date, by definition the defendant would be in possession 'during the case' and the phrase is unnecessary."[13]

**b.** The error in *Deckelbaum*'s interpretation is not limited to the fact that it renders the phrase "during the case" a nullity. As the bankruptcy court pointed out, the interpretation cannot be squared with the references in § 542(a) to other sections of the Bankruptcy Code.[14]

The first such provision is § 363, which sets out what property a bankruptcy trustee is entitled to use, sell, or lease,"[15] and which § 542(a) refers to in stating that the trustee is entitled to recover property that he "may use, sell, or lease under section 363[.]"[16] Under section 363, the trustee is entitled to use, sell, or lease "property of the estate[,]"[17] and (as the bankruptcy court observed) "property of the estate" is defined to include "many instances of property rights that the estate acquires post-petition."[18]

The second provision that undermines *Deckelbaum*'s interpretation is § 522, which is similarly referred to in § 542(a)'s description of the property that the trustee may recover. In addition to entitling the trustee to recover property that he may use, sell, or lease, § 542(a) entitles him to recover property "that the debtor may exempt under section

---

13.  *Id.* at 8.

14.  Mem. of Decision at 8 (Bankr. Dkt. 29; Attachment 1 hereto).

15.  11 U.S.C. § 363.

16.  11 U.S.C. § 542(a).

17.  11 U.S.C. § 362(b)(1).

18.  *Id.* (citing 11 U.S.C. §§ 541(a)(3), -(a)(4), -(a)(5), -(a)(6), and -(a)(7)).

522[.]" And just as the former category includes property of the estate (including post-petition property), so does the latter.[19]

Thus, *Deckelbaum* disregards specific indications in § 542(a)'s text that the turnover obligation extends to estate property acquired by the defendant post-petition.

**2.   *The legislative history confirms that § 542(a) applies where the property was acquired by the defendant post-petition.***

The legislative history of § 542(a) shows that the language enacted by Congress represented a conscious decision not to limit the duties and liabilities imposed by that section to cases where the defendant possessed the property when the petition was filed. In particular, the language enacted into law resulted from an amendment that *rejected* any such limitation.

In the bills that were reported out of committee to the full House and Senate, § 542(a) applied to entities in possession, custody, or control of estate property "on the date of the filing of the petition[.]"[20] But the bills were amended at the last minute to apply to entities in possession, custody, or control of estate property "during the case[.]"[21]

The current language therefore represents a deliberate choice by Congress to cover entities that obtain possession of estate property after the petition is filed.

_____

19. *Id.* (citing 11 U.S.C. § 522).

20. S. 2266, 95th Cong., § 542(a) (Oct. 31, 1977) (Attachment 3 hereto); H.R. 8200, 95th Cong., § 542(a) (Feb. 8, 1978) (Attachment 4 hereto).

21. 124 Cong. Rec. H11047, H11060 (daily ed. Sept. 28, 1978) (Attachment 5 hereto); 124 Cong. Rec. S17403, S17413 (daily ed. Oct. 6, 1978) (Attachment 6 hereto). *See* Thomas E. Plank, *The Outer Boundaries of the Bankruptcy Estate*, 47 Emory L.J. 1193, 1251–52 (1998):

> Just before final passage of the Code, Congress made last minute amend-ments to the bills that became the Code. One amendment changed the reference to the timing of an entity's possession or control of property in § 542(a) from "on the date of the filing of the petition" to "during the case."

Comments about the amendment in the Congressional Record confirm this: "The section makes clear that any entity, other than a custodian, is required to deliver property of the estate to the trustee or debtor in possession *whenever such property is acquired by the entity during the case.*"[22]

Thus, as the bankruptcy court said, "the legislative history seems clear that the phrase 'during the case' was intended to mean that § 542 applied where a defendant received property post-petition."[23]

### 3. *The cases that* **Deckelbaum** *relied on are inapposite, distinguishable, or incorrectly decided.*

*Deckelbaum* relied on three cases that it described as having "concluded that section 542 provides for turnover of pre-petition transfers, while section 549 [dealing with unauthorized post-petition transfers]is the appropriate means to attack post-petition transfers."[24] But one of those cases is entirely inapposite, the second was wrongly decided, and the third is both mistaken and distinguishable.

---

22. 124 Cong. Rec. H11096–97 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards) (emphasis added) ) (Attachment 5 hereto); 124 Cong. Rec. S17413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini) (emphasis added) (Attachment 6 hereto).

Note that the committee reports that are reprinted in the United States Code & Administrative News predate the last-minute amendment, and therefore discuss a version of the § 542(a) that was never enacted. H.R. Rep. No. 95-595 at 369, 95th Cong., 1st Sess. 369 (Sept. 7, 1977), 1978 U.S.C.C.A.N. 5963, 6325, 1977 WL 9628; S. Rep. No. 95-989 at 84, 95th Cong., 2d Sess. 84 (July 14, 1978), 1978 U.S.C.C.A.N. 5787, 5870, 1978 WL 8531.

23. Mem. of Decision at 8 (Bankr. Dkt. 29; Attachment 1 hereto).

24. 275 B.R. at 741. Section 549 provides that except as otherwise provided—

(a) the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2) (A) that is authorized only under section 303 (f) or 542 (c) of this title; or

(B) that is not authorized under this title or by the court.

The first case, *Vogel v. Russell Transfer, Inc.*,[25] did not involve § 542 or even cite it. Instead, it dealt with a trustee's efforts to avoid the grant of a security interest under 11 U.S.C. § 547 on the grounds that it constituted a preference. Whereas § 542 applies to property of the estate that comes within the defendant's possession, custody, or control "during the case," § 547 is expressly limited to transfers that occurred pre-petition (specifically, to transfers—

> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider[26][.])

Given this major difference in what the two provisions say, a decision regarding § 547 is of little use in interpreting § 542.

The second decision was *In re 31-33 Corp.*[27] That case did hold § 542(a) inapplicable to property acquired by the defendant post-petition, but it erroneously relied on portions of § 542(a)'s legislative history that related to the provision as it was originally written rather than as it was subsequently amended.[28] Specifically, it relied on the committee reports that are published in the United States Code Congressional and Administrative News—reports that predated the amended language and that are therefore irrelevant. The court in *31-33 Corp.* was apparently unaware that these reports referred to

---

25.  852 F.2d 797 (4th Cir. 1988), *cited in Deckelbaum*, 275 B.R. at 741.

26.  11 U.S.C. § 547(b)(4).

27.  100 B.R. 744 (Bankr. E.D. Penn. 1989).

28.  100 B.R. at 747 (citing H.R. Rep. No. 95-595 at 369, *supra* note 22, and S. Rep. No. 95-989 at 84, *supra* note 22).

proposed language that was subsequently abandoned, and it did not refer to the statements from the Congressional Record that are quoted above.[29]

The third decision cited in *Deckelbaum* is *Miller v. Lane*,[30] which held that because the defendant obtained the property at issue postpetition, recovery under § 542(a) was unavailable because an avoidance action under § 549 was time-barred. But nowhere in § 542(a) is there any suggestion that in a turnover action seeking to recover property acquired by the defendant post-petition, relief is available only if the trustee could succeed on an avoidance action under § 549.[31] Nor does the legislative history support any such limitation. *Miller* therefore improperly reads conditions into § 542(a) that Congress did not choose to establish. Indeed, while Congress enacted statutes of limitations governing § 549 and the other avoidance provisions,[32] it did not do so for § 542(a). Claims under § 542(a) are therefore subject to the defense of laches, not limitations.[33] By in effect subjecting a claim under § 542(a) to a statute of limitations, *Miller* not only ignored but interfered with the remedial regime that Congress established. And it did so without offering any reasoning or explanation for what it was doing.

In any event, when *Miller* is read in light of the facts that were actually before the court, it holds only that where the defendant acquired the property at issue post-petition, a claim under §542(a) is dependent on the viability of a claim under § 549 *when the defendant acquired the property as the result of a transfer*. But third parties may acquire

---

29. Page 11, above.

30.  167 B.R. 729 (Bankr. E.D. Mass. 1981).

31.  *Miller*, 167 B.R. at 732.

32.  11 U.S.C. §§ 546, 549(d).

33.  *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 336–37 (3d Cir. 2004).

possession, custody, or control of estate property without there having been a transfer (as discussed below, that is what took place here), and in such a case § 549 cannot possibly apply. In such a case it would make no sense to condition relief under § 542(a) on the availability of a claim under § 549 to avoid a transfer that never took place.

The Bankruptcy Code defines "transfer" as—

> (A) the creation of a lien;
> (B) the retention of title as a security interest;
> (C) the foreclosure of a debtor's equity of redemption; or
> (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—
>> (i) property; or
>> (ii) an interest in property.[34]

The Dahan Defendants' receipt of estate assets here obviously did not involve the creation of a lien, the retention of title as a security interest, or the foreclosure of a debtor's equity of redemption. Nor did it involve the debtor's disposing of or parting with property or an interest in property. Rather, the Dahan Defendants are alleged to have received and held the estate assets as conduits *on behalf of* the debtor.[35]

The rule in the Fourth Circuit, as elsewhere, is that receipt of estate property, without more, is not enough to render the recipient a transferee. Rather, a recipient is a transferee only if he has legal dominion and control over the property such that he can use it for his own benefit.[36] In contrast, an entity that acts as a mere "conduit" for the

---

34. 11 U.S.C. § 101(54).

35. First Am. Compl. ¶¶ 114, 123, 125, 168, 175, 177, 180, 220, 227, 257, 279, 305 (Attachment 2 hereto).

36. *E.g.*, *In re Southeast Hotel Properties L.P.*, 99 F.3d 151, 155–56 (4th Cir. 1996); *In re Columbia Data Products, Inc.*, 892 F.2d 26, 28 (4th Cir. 1989); *In re Baker & Getty Financial Services, Inc.*, 974 F.2d 712, 722 (6th Cir. 1992); *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893–95 (7th Cir. 1988).

property is not a transferee.[37] So if *A* gives an envelope full of cash to a courier for delivery to *B*, the courier not the transferee, but is merely the conduit by which the cash is transferred to *B*. Similarly, if *A* deposits the cash in his bank account and wires the funds to *B*, the bank is a conduit, not a transferee. In each case, the conduit was merely the instrumentality used by the transferor to carry out the transfer.

The First Amended Complaint alleges that the Dahan Defendants obtained possession of estate property as conduits.[38] By definition, therefore, they are not transferees. That being the case, the Dahan defendants' receipt of estate assets did not result from transfers to which § 549 might apply, and there is no need for the Trustee to bring an avoidance action before pursuing turnover liability under § 542:

> Section 542 is not about the obligations of transferees. It is about the obligations of persons who possess, control, or have custody, and these are normally persons who do *not* have "the right to put the money to [their] own purposes." A transferee claims an entitlement to the money; entities targeted by section 542 do not.[39]

### 4. *Deckelbaum's policy analysis was mistaken.*

The court in *Deckelbaum* said that its holding was justified by "[s]everal policy reasons[.]"[40] But a judge's view of what would constitute good policy cannot override § 542's plain language and legislative history; a court's role is "'is to interpret the intent of Congress…, not to make a freewheeling policy choice."[41] And in any event, the policy discussion in *Deckelbaum* was mistaken because it relied on false assumptions.

---

37. See cases cited in note 36, above.

38. First Am. Compl. ¶¶ 114, 123, 125, 168, 175, 177, 180, 220, 227, 257, 279, 305 (Attachment 2 hereto).

39. *In re USA Diversified Prods., Inc.*, 100 F.3d 53, 56 (7th Cir. 1996).

40. 275 B.R. at 741.

41. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993).

Despite the statement in *Deckelbaum* that the court's holding was justified by "several" policy reasons, the court identified only one: "[I]f both section 542 and 549 were available to avoid post-petition transfers, the statute of limitations contained within § 549(d) would be rendered meaningless, since a trustee who is time-barred by § 549(d) could merely invoke § 542."[42] This argument is mistaken.

*First*, the argument assumes that if § 542 is applied to property acquired by the defendant post-petition, it would always provide the same relief that could be obtained by a timely action under § 549. But that is not correct. There is an important category of cases in which § 542 by itself would not provide adequate relief: cases in which the defendant holds a *nonpossessory* interest in property of the estate. For example, a mortgagee or holder of a security interest typically lacks possession, custody, or control of the collateral. In cases where such an interest was avoidable by the trustee, § 542 would provide no relief against the holder of the interest. If cases of that sort, a trustee who failed to file a timely suit under § 549 would *not* be able to avoid the consequences of that failure by resorting to § 542.

*Second*, the court in *Deckelbaum* apparently did not realize that the policy justification it cited does not apply to all cases in which relief *is* available under § 542. There are situations in which applying § 542 to estate property acquired by the defendant post-petition would not render the limitations period governing § 549 "meaningless."[43] In particular, there are cases in which the relief afforded by § 542 is incomplete without relief under § 549 being granted as well. For example, where the defendant is in

---

42. *Id*. As previously noted, claims under § 542 are to the defense of laches rather than to the defense of limitations. *In re Mushroom Transp. Co., Inc.*, 382 F.3d at 336–37.

43. *Deckelbaum*, 275 B.R. at 741.

possession of real estate as a result of a post-petition conveyance by the debtor, § 542 could give the trustee possession of the property but not merchantable title. Under our interpretation of § 542, the limitations period governing § 549 would still have operative effect in that it would bar claims for the type of relief that is available only under § 549.

*Deckelbaum*'s interpretation of § 542 is undermined by the fact that its policy rationale applies only to a subset of the cases to which § 542 applies. One is therefore faced with three options: (a) reject *Deckelbaum*, (b) leave *Deckelbaum*'s holding in place, and thereby preclude relief under § 542 in some cases for no reason at all (and contrary to the statute's plain language and legislative history), or (c) limit the scope of that holding by drawing distinctions that are not reflected in the statutory text. Of these options, (b) and (c) are obviously untenable. The only possible conclusion that remains is that *Deckelbaum* was decided incorrectly and should not be followed.

**B.   Even if *Deckelbaum*'s holding were correct, it should not be applied here because the counts at issue allege that the Dahan defendants acquired property of the estate as conduits, not transferees.**

Even if one assumes that *Deckelbaum* was correct, its holding should not be applied apply here because the counts at issue here allege that the Dahan defendants took possession of the funds, not as transferees against whom an avoidance action under § 549 could be brought,[44] but as conduits who are subject to the turnover obligation under § 542(a).

*Deckelbaum* should be read in light of the facts before the court (which involved the use of estate assets to pay legal fees—a true transfer) and the reasoning on which the

---

44. First Am. Compl. ¶¶ 114, 123, 125, 168, 175, 177, 180, 220, 227, 257, 279, 305 (Attachment 2 hereto).

decision was based (which turned on a perceived need to construe § 542 in a way that would not render the limitations governing suits to avoid unauthorized post-petition transfers). Doing so yields the conclusion that the decision deals only with cases where the defendant acquired property of the estate *as the result of a transfer by the defendant*, and was not acting as a conduit on behalf of the debtor.

As we have previously explained, persons who receive estate property as conduits or intermediaries acting on behalf of the debtor are not recipients of a transfer, and therefore cannot be sued under § 549.[45] And as we have also noted, the amended complaint alleges (in the courts at issue) that the Dahan Defendants acted as conduits.[46] Thus, even if *Deckelbaum* were correct, it should not be read to require the dismissal of claims, such as those at issue here, in which the defendants are alleged to have acted as conduits rather than transferees.

## Conclusion

For the foregoing reasons, the bankruptcy court's order dismissing Counts 1A, 2A, 3A, 4A, 5A, and 6A should be reversed.

---

45. Pages 13–15.

46. First Am. Compl. ¶¶ 114, 123, 125, 168, 175, 177, 180, 220, 227, 257, 279, 305 (Attachment 2 hereto).

Respectfully submitted,

  /s/ *Neal Goldfarb*
Richard H. Gordin, No. 02634
Max Maccoby, No. 16653
Neal Goldfarb, No. 05396
BUTZEL LONG TIGHE PATTON, PLLC
1747 Pennsylvania Ave., NW, Suite 300
Washington, D.C. 20006
T: (202) 454-2800 ▪ F: (202) 454-2805
rgordin@butzeltp.com
mmaccoby@butzeltp.com
ngoldfarb@butzeltp.com

Roger Schlossberg, No. 02021
SCHLOSSBERG & ASSOCIATES
134 West Washington St.
P.O. Box 4227
Hagerstown, MD 21741
T: (301) 739-8610 ▪ F: (301) 791-6302
rschlossberg@schlosslaw.com

*Counsel for Plaintiff*

**Certificate of Service**

I HEREBY CERTIFY that on this 9th day of September, 2011, the foregoing Appellants'

Opening Brief was served on the following via the Court's ECF system:

> Richard Stolker, Esq.
> 110 N. Washington St., Suite 320
> Rockville, Maryland 20850
> rstolker@stolker.com
> *Counsel for defendants David Dahan;*
> *Karin Dahan; Sarit Dahan; Maia, LLC;*
> *Rokama, LLC; and Raymonde, LLC*

> Jeffrey M. Orenstein, Esq.
> Goren, Wolff & Orenstein, LLC
> Shady Grove Plaza
> 15245 Shady Grove Road
> North Lobby, Suite 465
> Rockville, Maryland 20850
> jorenstein@gwolaw.com
> *Counsel for defendants David Dahan;*
> *Karin Dahan; Sarit Dahan, Maia, LLC;*
> *Rokama, LLC;, and Raymonde, LLC*

> _/s/ Neal Goldfarb_____
> Neal Goldfarb