IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MINH VU HOANG and      :
THANH HOANG
_____      :

GARY A. ROSEN, Trustee
    Appellant      :

    v.      :    Civil Action No. DKC 11-2320

DAVID DAHAN, et al.      :
    Appellees
                             :

**MEMORANDUM OPINION**

Pending before the court is an appeal from an order entered by United States Bankruptcy Judge Thomas J. Catliota on June 28, 2011, partially dismissing the trustee's amended complaint in this adversary proceeding. Because the facts and legal arguments are adequately presented in the briefs and record, oral argument is deemed unnecessary. *See* Fed.R.Bankr.P. 8012; Local Rule 105.6. For the reasons that follow, the order of the bankruptcy court will be affirmed.

**I.  Background**

On May 10, 2005, Debtor Minh Vu Hoang filed a voluntary petition under chapter 11 of the bankruptcy code in the United States Bankruptcy Court for the District of Maryland. She served as debtor-in-possession until Appellant Gary A. Rosen was appointed chapter 11 trustee on August 31, 2005. The case was converted to chapter 7 on October 28, 2005, and Appellant was

named chapter 7 trustee shortly thereafter.   He has served in that capacity ever since.[1]

## A.   The Adversary Complaint

Appellant commenced this adversary proceeding on February 6, 2011 – one of many such actions brought by the trustee attempting to recover assets fraudulently concealed by the debtor.   According to the amended complaint, from 1998 to 2005, Debtor purchased a large number of properties at foreclosure sales through various business entities under her control. These entities were mere "instrumentalities and alter egos" of Debtor (ECF No. 6-1 ¶ 52) – they were nominally partnerships or limited liability companies governed by one or more agreements naming either fictitious partners/members or Debtor as the only partner/member; they generally kept no financial records and had no tax identification numbers; their assets were routinely commingled at the behest of Debtor and for her sole benefit; and they existed for no purpose other than holding title to properties purchased by Debtor.   After acquiring a distressed property and titling it in the name of one business entity, Debtor typically made renovations and sold the property for

---

[1]   Debtor's husband, Thanh Hoang, separately filed a voluntary chapter 11 petition on July 12, 2005.   That case was also converted to chapter 7, and Mr. Rosen was appointed as the trustee.   On September 28, 2005, the bankruptcy court ordered that Mr. and Mrs. Hoang's bankruptcy estates be jointly administered.

substantial profit, often using a portion of the sale proceeds
to purchase another property in the name of a different business
entity.  This process, or something similar to it, was repeated
many times; Debtor used literally hundreds of sham business
entities to "flip" hundreds of properties.  Her interest in
those entities and the associated properties, however, was not
reflected in her bankruptcy schedules or statement of financial
affairs and, on April 11, 2007, she was criminally indicted on
charges related to bankruptcy and tax fraud.[2]

According to Appellant, the filing of a bankruptcy petition
and the pendency of criminal charges did little to deter
Debtor's scheme.  Among those who, post-petition, "acted in
concert with [Debtor] to help her conceal her assets" (*id*. at ¶
73) was Appellee David Dahan.  Upon the request of Debtor, Mr.
Dahan created Appellee Maia, LLC ("Maia"), for the purpose of
"funnel[ing]" proceeds of the sale of properties "as part of
[Debtor's] scheme to hide her assets from the Trustee." (*id*. at
¶ 75).  Two other business entities "owned (in whole or in
substantial part) and controlled" by Mr. Dahan (*id*. at ¶¶ 15,
16) – Appellees Rokama, LLC ("Rokama"), and Raymonde, LLC
("Raymonde") – were also used by Debtor for similar purposes.

---

[2] On October 13, 2010, Debtor was convicted, upon her guilty
plea, of conspiracy to defraud an agency of the United States,
in violation of 18 U.S.C. § 371.  She was sentenced to a term of
imprisonment of sixty months, which she is presently serving.

The amended complaint raises nine sets of counts, each of which relates to the post-petition purchase and subsequent sale or refinancing of a parcel of real property.  The allegations and causes of action set forth with respect to six of those properties are relevant to the instant appeal.

The first property, located at 3119 Parkway, Cheverly, Maryland ("Parkway"), was purchased at a foreclosure sale on December 15, 2005.  The successful bidder was Rokoma, LLC, a business entity created and controlled by Debtor.[3]  While the HUD-1 settlement statement identified "Rokoma, LLC," as the purchaser, title to the property was conveyed to Rokama, an entity controlled Mr. Dahan.  On or about March 7, 2007, Rokama sold Parkway for $371,000, receiving a total of $338,518.78 from the sale.  Of that amount, $146,000 was used to pay down a home-equity line of credit in the name of Mr. Dahan and his wife, Appellee Sarit Dahan (together, "the Dahans").[4]  On or about May 3, 2007, Mr. Dahan drew $146,000 from the same line of credit to obtain a cashier's check, which, in turn, was used by ASA, LLC –

---

[3] According to the complaint, the purchase funds derived from "three cashier's checks payable to [Rokoma], LLC: one in the amount of $228,899.56, another in the amount of $45,316.89, and the third in the amount of $17,604.84."  (ECF No. 6-1 ¶ 102).

[4] The Dahans' daughter, Karin Dahan, is also named as an appellee, but there are no substantive allegations against her with respect to the six properties at issue in this appeal.

another of Debtor's entities – to purchase a property in Annapolis, Maryland. The remainder of the sale proceeds, $192,518.78, was deposited into a bank account in the name of Rokama. Mr. Dahan used $180,000 of those funds to purchase a quantity of diamonds from his brother, a diamond merchant in Israel, which he then delivered to Debtor. An additional amount of $7,914.59 was distributed to Maia.

The second property, 6304 Kenhowe Drive, Bethesda, Maryland ("Kenhowe"), was purchased for $525,000 by Rokama at an auction on December 14, 2005. Debtor signed the memorandum of purchase at the auction on behalf of Rokama, listing her home address as Rokama's business address. At closing, the HUD-1 settlement sheet identified the buyer as "Rokoma, LLC," but title was conveyed to Rokama. According to the complaint, approximately $484,589 of the purchase funds for Kenhowe is traceable to proceeds from the sale of three other properties, each of which was titled in the name of a different business entity established by Debtor. The remaining amounts were derived from checks payable to Debtor, another business entity associated with Debtor, and Rokama. On September 21, 2006, Kenhowe was sold for $640,000. Rokama received $596,547.25 from the sale, but immediately transferred that amount to an account in the name of Maia. The complaint recites that $165,566.09 of the sale proceeds was used to purchase a property in the District of

Columbia, which is currently titled in the name of Raymonde.  An additional amount of $78,000 was deposited into an account in the name of the Dahans, but $77,126 was transferred back to Maia and used to make various payments.  Approximately $172,500 was used for the purchase of a property in Fort Washington, Maryland, by another of Debtor's business entities.[5]

The third property, 13416 Sherwood Forest Drive, Bethesda, Maryland ("Sherwood"), was purchased at an auction on May 19, 2006, by Kashan, LLC, an entity associated with Debtor, for $467,000.  At least ninety percent of the funds used to purchase Sherwood were traceable to proceeds from the sale of other properties by a number of Debtor's business entities or from accounts associated with those entities.  Pursuant to an order of the Circuit Court for Montgomery County, Maryland, Maia was later substituted as the purchaser.  Prior to recordation of the deed, Maia obtained a line of credit, secured by a deed of trust on Sherwood, in the amount of $400,000.  Virtually the entire amount available on the line of credit was subsequently drawn, and the traceable funds were disbursed as follows: $230,500 was used to pay down the balance on another line of credit in the name of the Dahans, from which funds had previously been paid to Debtor; $29,000 was paid to Maia; $34,475 was deposited into an

---

[5] This property, referred to as "300 Foundry Lane," is the ninth property at issue in the adversary complaint.

account in the name of the Dahans; $10,000 was used by Maia to pay an architect working on a property owned by Maia; $4,000 was used by Mr. Dahan to pay a contractor for work on a property that he owned; and $41,451.65 was used to pay taxes and loan fees.

The fourth property, 7654 Bay Street, Pasadena, Maryland ("Bay"), was purchased on September 16, 2005, by "Ballinger GP," another business entity established by Debtor, for approximately $475,000.  The purchase funds for this property consisted of $438,618.72 from a bank account in the name of Rocky LLC, another of Debtor's business entities; $1,125 from a check drawn on an account in the name of Minbilt Co., a real estate company established by Debtor; and a $35,000 check made payable to Debtor.  The Bay property was sold on July 18, 2007, for $620,000, and the proceeds were deposited into a Ballinger account.  On or about July 25, 2007, $150,000 of those funds was used to pay down the balance on the same line of credit, in the name of the Dahans, as the proceeds from the sale of Sherwood.

The fifth property, 6700 Sundown Road, Gaithersburg, Maryland ("Sundown"), was purchased on December 8, 2006.  This property was titled in the name of Elite Realty, LLC, an entity associated with Debtor.  Of the $409,000 purchase price, at least $271,541.54 derived from proceeds of a prior sale by another of Debtor's business entities, a check payable to a

different entity associated with Debtor, and a cashier's check made payable to Debtor or her business associate.  The property was sold on June 8, 2007, for $390,000.  From the proceeds, $362,315.31 was deposited into an account in the name of Elite Realty, and $56,000 of that amount was later wired to Maia.

The sixth property, 11819 Milbern Drive, Potomac, Maryland ("Milbern"), was purchased on September 19, 2005, in the name of Regency General Partnership, another of Debtor's entities, for $621,617.37.  The purchase funds are traceable to checks made payable to various other business entities associated with Debtor.  On or about June 29, 2006, Milbern was refinanced, and the loan was secured by a deed of trust on the property.  Of the loan amount, $101,500 was disbursed to "J. Noda Remodeling," a business entity owned by an associate of Debtor's, and later deposited into an account in the name of "Noda LLC," another of Debtor's business entities.  On or about August 8, 2006, $15,000 was disbursed to Rokama from this account and, on September 19, 2006, Rokama transferred this money to a business entity associated with Debtor's son.

Appellant sought to recover the money distributed to Appellees from the sale or refinance of these properties under three separate theories.  First, he alleged that Appellees received these distributions as "conduits, nominees, and/or agents" of Debtor, and that they were "obligated to turn them

over to [Appellant] or to account . . . for their value"
pursuant to 11 U.S.C. § 542(a). (ECF No. 6-1 ¶ 96). Appellant
further alleged that Appellees' acts "constituted conversion of
property belonging to the bankruptcy estate[.]" (*Id*. at ¶ 129).
In the alternative, he asserted that the distributions to
Appellees were unauthorized post-petition transfers subject to
avoidance under 11 U.S.C. § 549.[6]

### B.   The Motion to Dismiss

Appellees moved to dismiss all counts related to these six
properties for failure to state a claim.  With regard to the
turnover counts, they argued that "Section 542 is only available
[to] obtain turnover of assets that were in the hands of a
defendant pre-petition . . . [and] does not apply to assets that
came into the hands of [Appellees] post-petition" (ECF No. 6-2,
at 2 (emphasis removed)), relying principally on *Deckelbaum v.*
*Cooter, Mangold, Tompert & Chapman, PLLC*, 275 B.R. 737 (D.Md.
2001).  They contended that the conversion claims could not be
sustained because "[t]he tort of conversion only applies to
tangible personal property," and "money — which is what
[Appellant] alleges was converted — is not tangible personal
property." (ECF No. 6-2, at 2).  Finally, Appellees argued that

---

[6] The complaint also included a count alleging conversion of
a promissory note associated with Kenhowe.  That count is not
relevant to the instant appeal.

Appellant's claims for avoidance of unauthorized post-petition transfers under 11 U.S.C. § 549 were time-barred.

Appellant opposed this motion, insisting that Appellees "are subject to liability under § 542(a) even though (1) they first obtained possession of the property at issue after the petition was filed and (2) they no longer possessed the property when this [adversary] proceeding was commenced." (ECF No. 6-5, at 11). As support for this proposition, Appellant pointed to the legislative history of § 542, which reflects that "any entity, other than a custodian, is required to deliver property of the estate to the trustee or debtor in possession whenever such property is acquired by the entity during the case." (*Id.* at 13 (internal citation and emphasis removed)). To the extent that *Deckelbaum* held otherwise, Appellant argued, it was wrongly decided.[7]

The parties appeared before Judge Catliota for a hearing on June 15, 2011. At the outset of the hearing, Appellant conceded that his § 549 claims were time-barred, but maintained that a turnover order pursuant to § 542(a) was the proper remedy under the circumstances presented. Following extensive argument, the court granted Appellees' motion with respect to the conversion

---

[7] Appellant further argued that he sufficiently pleaded a claim for conversion because the money at issue was specifically identifiable. He did not, however, address Appellees' limitations defense with respect to the § 549 claims.

counts, dismissing those claims without prejudice to Appellant's right to amend. As to the turnover claims, the court explained that it would issue an opinion and order granting the motion based on the reasoning of *Deckelbaum*. In his subsequent opinion, however, Judge Catliota expressed reservations with regard to this outcome:

> This Court will follow *Deckelbaum* and dismiss [Appellant's] §542 claims. However, if the Court were writing on a clean slate, it might well reach a different result. The *Deckelbaum* court focused on the structure of the Bankruptcy Code, and in particular, the interplay between §542 and §549. But the plain language of §542 does not limit its application to recovery of property that is in a defendant's possession only as of the petition date. *See United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S.Ct. 1026 (1989) (courts should interpret a statute in accordance with its plain meaning). To the contrary, §542 recovery can be sought from "an entity . . . in possession, custody, or control *during the case* of property . . . ." 11 U.S.C. §542 (emphasis added). The specific application of the section to property that is in the possession, custody or control of a defendant "during the case" would seem contrary to a determination that it only applies to pre-petition transfers.
>
>                   . . .
>
> The courts that conclude that §542 is limited to cases where the defendant is in possession of recoverable property as of the petition date do so based on §549. . . . They reason that §549 specifically addresses post-petition transfers and contains important limitations that would not apply to a post-petition §542 action. . . .

11

On their face at least, §542(a) and
§549 address different circumstances.
Section 542(a) addresses cases where the
defendant is or has been *in possession* of
property of the estate, while §549 addresses
*unauthorized post-petition transfers* of
property. Nevertheless, generally speaking,
because one can be in possession of property
only where one has received a transfer of
property, there is substantial overlap
between the two provisions. But merely
because there may be overlap in the
application of the two statutory provisions
does not mean that one, §549, limits the
other, §542. . . .

(ECF No. 6-11, at 7-9) (emphasis in original; footnotes

omitted).

C.   **The Appeal**

Appellant filed a timely motion for leave to appeal and

concomitantly moved to stay the proceedings in the adversary

case pending resolution of the prospective appeal.   Appellees

did not oppose these motions.   The bankruptcy court issued an

order granting a stay pending appeal on August 19, 2011.   This

court granted leave to appeal on August 26.   (ECF No. 3).

Appellant filed his brief on September 9, presenting the

following questions:

(1) whether [11 U.S.C. § 542(a)] applies
when the property at issue is acquired by
the defendant after the bankruptcy has
commenced, and

(2) whether, assuming this provision applies
when the property at issue is transferred to
the defendant by the debtor after the
bankruptcy has commenced, it also applies

12

> when the property is acquired by the
> defendant post-petition and the defendant
> acquired the property on behalf of the
> debtor rather than as a transferee.

(ECF No. 4, at 6).   Appellees filed a brief in opposition on
October 21 (ECF No. 9); Appellant filed a reply brief on
November 3 (ECF No. 10).

## II.  Standard of Review

A district court reviews a bankruptcy court's dismissal for
failure to state a claim under a *de novo* standard of review.
*See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.
1993).

Federal Rule of Civil Procedure 12(b)(6) applies to
adversary proceedings in a bankruptcy cases pursuant to Federal
Rule of Bankruptcy Procedure 7012(b).   The purpose of a motion
to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the
sufficiency of the complaint.   *See Presley v. City of
Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   A
plaintiff's complaint need only satisfy the standard of Rule
8(a), which requires a "short and plain statement of the claim
showing that the pleader is entitled to relief."   Fed.R.Civ.P.
8(a)(2).   Nevertheless, "Rule 8(a)(2) still requires a
'showing,' rather than a blanket assertion, of entitlement to
relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3
(2007).   That showing must consist of more than "a formulaic

recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

At this stage, the court must consider all well-pleaded allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, the court need not accept unsupported legal allegations. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Nor must it agree with legal conclusions couched as factual allegations, *see Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the pleader is entitled to relief.'"  *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)).  Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. Analysis

Many courts have struggled in construing the turnover and avoidance provisions of the bankruptcy code. *See, e.g., Dunes Hotel Associates v. Hyatt Corp.*, 245 B.R. 492,492 (D.S.C. 2000) (describing the task as "an Odyssean journey through [an] analytical labyrinth," an "intractable and complex set of legal issues"). Some of these difficulties arise from what appears to be a conflict in the application of two fundamental principles of statutory construction. Courts are advised, on one hand, that "[t]he plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (internal marks and citation omitted). At the same time, they must be mindful that

> [s]tatutory construction . . . is a holistic
> endeavor. A provision that may seem
> ambiguous in isolation is often clarified by
> the remainder of the statutory scheme –
> because the same terminology is used
> elsewhere in a context that makes its
> meaning clear, or because only one of the
> permissible meanings produces a substantive
> effect that is compatible with the rest of
> the law.

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

The question of how to give effect to the plain language of the relevant provisions of the bankruptcy code while concomitantly reading those provisions in harmony with the statutory scheme is at the heart of this appeal.  The case relied upon by the bankruptcy court – *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, P.L.L.C.*, 275 B.R. 737 (D.Md. 2001) – "focused on the structure of the Bankruptcy Code, and, in particular, the interplay between [11 U.S.C.] § 542 and § 549." *In re Minh Vu Hoang*, 452 B.R. 902, 907 (Bankr.D.Md. 2011).[8] Specifically, the *Deckelbaum* court found that if the trustee were permitted to recover property transferred post-petition under § 542(a), which has no statute of limitations, then the two-year "statute of limitations contained within § 549(d) would be rendered meaningless[.]"  *Deckelbaum*, 275 B.R. at 741.  As the bankruptcy court noted, however, "[t]he plain language of § 542(a) does not limit its application to recovery of property that is in a defendant's possession only as of the petition date."  *In re Minh Vu Hoang*, 452 B.R. at 907 (citing *Ron Pair Enters.*, 489 U.S. at 242, for the proposition that "courts

_____

[8] For ease of exposition, all references to provisions of the bankruptcy code will be referred to by section number only. These sections are all found in Title 11 of the United States Code.

should interpret a statute in accordance with its plain meaning"). "The specific application of the section to property that is in the possession, custody or control of a defendant 'during the case' would seem contrary to a determination that it only applies to pre-petition transfers." *Id*. Thus, the bankruptcy court saw a conflict between its reading of the plain language of § 542(a) and the relationship between that provision and the avoidance statute set forth in § 549.

On appeal, as in the court below, the parties do not make a meaningful attempt to resolve this conflict. Rather, they merely stake their respective claims on each side of the fence. In arguing that the property in question – *i.e.*, money distributed to Appellees from proceeds of the sale or refinancing of property that was acquired and sold post-petition – is subject to turnover under § 542(a), Appellant relies principally on the plain language of the statute, arguing that *Deckelbaum* was wrongly decided because it "is inconsistent with the statutory text and the legislative history[.]" (ECF No. 4, at 12). Appellees argue, on the other hand, that the bankruptcy court's decision was "completely in harmony with the statutory scheme established by Congress for recovery of estate property under Subchapter III of Chapter 5 of the Bankruptcy Code." (ECF No. 9, at 11).

Ultimately, neither of these arguments is particularly persuasive because the parties fail to address the key concept of "property of the estate," which both instructs as to the meaning of § 542(a) and facilitates an understanding of its role within the statutory scheme.  Upon full analysis, the proper outcome in this case is compelled by the following logic: (1) § 542(a) entitles the trustee to possession of property of the estate; (2) property that is transferred is not property of the estate; and (3) the property at issue in this case was transferred.  If each of these premises is shown to be true, it follows necessarily that the property at issue cannot be recovered pursuant to § 542(a).

## A. § 542(a) Entitles the Trustee to Possession of Property of the Estate

The filing of a bankruptcy petition gives rise to the creation of an estate.  *See* § 541(a).  As relevant to the instant case, the bankruptcy estate is "comprised of all the following property, wherever located and by whomever held":

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case. . . . .
>
> (3) Any interest in property that the trustee recovers under section 329(b) [excess attorney's fees], 363(n) [damages from improper sale], 543 [property turned over by custodian], 550 [property from avoided transfer], 553 [property recovered

18

from offset], or 723 [property recovered from general partners] of this title. . . .

(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

(7) Any interest in property that the estate acquires after the commencement of the case.

*Id*. Thus, "property of the estate" consists of every conceivable interest of the debtor in property as of the time the bankruptcy case is commenced, regardless of who has possession of it. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983) (Congress intended the bankruptcy estate to be comprised of "any property made available to [it] by other provisions of the Bankruptcy Code," including "property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced"); *In re Barringer*, 244 B.R. 402, 406 (Bankr.E.D.Mich. 1999) ("it is obvious from a cursory reading of § 541(a) that the bankruptcy estate is *not* limited to those interests held by the debtor when the case commenced. Indeed, the whole point of sub-paragraphs (3) through (7) clearly is to bring into the estate other kinds of interests.") (emphasis in original).

In a chapter 7 case, the trustee becomes the representative of the estate upon his appointment and qualification. *See* § 323. It is often said that the trustee essentially steps into

the shoes of the debtor with respect to her interests at the time the petition is filed:

> [It is a] basic tenant of bankruptcy law that a bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time she filed the bankruptcy petition. 11 U.S.C. § 541; *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1987; [*In re*] *Groves*, 120 B.R. [956, 966 (Bankr.N.D.Ill. 1990)]. Filing a bankruptcy petition does not expand or change a debtor's interest in an asset; it merely changes the party who holds that interest. *See* [*In re*] *Sildorff*, 96 B.R. [859, 866 (C.D.Ill. 1989)]. Further, a trustee takes the property subject to the same restrictions that existed at the commencement of the case. "'To the extent that an interest is limited in the hands of a debtor, it is equally limited as property of the estate.'" [*In re*] *Balay*, 113 B.R. [429, 445 (Bankr.N.D.Ill. 1990)] (quoting 4 Collier on Bankruptcy § 541.06 (15th ed. 1989)).

*In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992). Generally, it is the responsibility of the trustee to "marshal and consolidate the debtor's assets into a broadly defined estate from which, in an equitable and orderly process, the debtor's unsatisfied obligations to creditors are paid to the extent possible." *In re Andrews*, 80 F.3d 906, 909-10 (4th Cir. 1996) (footnotes omitted).

Given that the trustee is tasked with consolidating the "property of the estate," and that these assets are not necessarily in the debtor's possession, "there must be some

mechanism for acquiring control of them." *Walker v. Weese*, 286 B.R. 294, 299 (D.Md. 2002). The turnover provision of § 542(a) is one such mechanism. *See Whiting Pools*, 462 U.S. at 205. It provides:

> Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§ 542(a).

Explicitly referenced in the statute is § 363, which authorizes the trustee to "use, sell, or lease . . . property of the estate," § 363(b)(1), and § 522, which permits the debtor to exempt certain "property of the estate," §522(b)(1). Thus, absent exceptions not relevant here, § 542(a) requires an "entity" – *i.e.*, a "person, estate, trust, governmental unit, [or] United States trustee," § 101(15)[9] – in possession of "property of the estate" at any point during the bankruptcy case to deliver such property, or the value of such property, to the trustee. *See In re Pyatt*, 486 F.3d 423, 427 (8th Cir. 2007) ("By referring to § 363 . . . the drafters of § 542(a) made it clear

---

[9] Pursuant to 11 U.S.C. § 101(41), a "person" includes an "individual, partnership, and corporation."

that the turnover obligation applies to property of the
estate."); *In re Coomer*, 375 B.R. 800, 803-04 (Bankr.N.D.Ohio
2007) ("although not specifically stated in § 542, fundamental
to the concept of 'Turnover' is that the asset to be turned over
must be property of the debtor's bankruptcy estate") (citing *In
re Sims*, 278 B.R. 457, 475 (Bankr.E.D.Tenn. 2002)); *Dunes Hotel*,
245 B.R. at 505 ("§ 542 mandates only the turnover of 'property
of the estate' to a bankruptcy trustee") (quoting *In re
Springfield Furniture, Inc.*, 145 B.R. 520, 529 (Bankr.E.D.Va.
1992)) (internal marks omitted).  "By its express terms, section
542(a) is self-executing, and does not require that the trustee
take any action or commence a proceeding or obtain a court order
to compel the turnover."  Collier on Bankruptcy ¶ 542.02, p.
542-6 (16th ed. 2010) (footnotes omitted).  Consistent with that
reading, courts generally agree that the turnover provision "is
not intended as a remedy to determine disputed rights of parties
to property[,] [but] . . . to obtain what is acknowledged to be
property of the estate."  *In re Suncoast Towers South
Associates*, Nos. 98-10537-BKC-AJC, 98-1451-BKC-AJC-A, 1999 WL
549678, at *10 (Bankr.S.D.Fla. June 17, 1999) (citing *In re
Julien Co.*, 128 B.R. 987, 993 (Bankr.W.D.Tenn. 1991)); *see also
In re Knight*, Bankr. No. 04-85036, Adv. No. 06-8001, 2006 WL
3147714, at *3 (Bankr.C.D.Ill. 2006) (same).

The first premise, then, is unquestionably true.  The only property subject to turnover under § 542(a) is "property of the estate."  The bankruptcy estate includes not just property in which the debtor has a possessory interest at the time the bankruptcy case is commenced, but also property that is later "recovered" by the trustee through other provisions of the bankruptcy code.  *See* § 541(a)(3).  As the representative of the estate, the chapter 7 trustee is responsible for collecting all "property of the estate" so that it may be liquidated and equitably distributed to creditors.  In aid of that responsibility, § 542(a) creates an affirmative duty of any entity in possession of such property to deliver it to the trustee.  As the Eighth Circuit succinctly stated,

> The principle is simply this: that a person holding property of a debtor who files bankruptcy proceedings becomes obligated, upon discovering the existence of the bankruptcy proceedings, to return that property to the debtor (in chapter 11 or 13 proceedings) or his trustee (in chapter 7 proceedings).  Otherwise, if persons who could make no substantial adverse claim to a debtor's property in their possession could, without cost to themselves, compel the debtor or his trustee to bring suit as a prerequisite to returning the property, the powers of the bankruptcy court and its officers to collect the estate for the benefit of creditors would be vastly reduced.  The general creditors, for whose benefit the return of property is sought, would have needlessly to bear the cost of its return.  And those who unjustly retain

23

possession of such property might do so with
impunity.

*In re Knaus*, 889 F.2d 773, (8th Cir. 1989).[10]

## B.   Property that Is Transferred Is Not Property of the Estate

While the bankruptcy estate defined in § 541(a) has been
described as "broad and all-embracing," *In re Cordova*, 73 F.3d
38, 42 (4th Cir. 1996) (internal marks omitted), it is not
without limits.  One such limit is implicit in the fact that §
541(a)(3) makes an interest in property that the trustee
"recovers" under enumerated provisions "property of the estate."
The word "recover" is not defined in the bankruptcy code, but is
generally understood as meaning "to get or obtain again, to
collect, to get renewed possession of; to win back[;] [t]o
regain, as lost property, territory, appetite, health, courage."
*In re Krueger*, No. 98-18686, 2000 WL 895601, at *5
(Bankr.N.D.Ohio June 30, 2000) (quoting Black's Law Dictionary
1147 (5th ed. 1979)), *abrogated on other grounds by In re Burns*,

---

[10] The Fourth Circuit has interpreted the language of §
542(a) calling for the turnover of property "or the value of
such property" as requiring any entity that possessed estate
property at any time after the commencement of the bankruptcy
case, with knowledge of the case, to pay the trustee the value
of the property if it is no longer in its possession.  *See In re
Shearin*, 224 F.3d 353, 356-57 (4th Cir. 2000) (citing *In re USA
Diversified Prods., Inc.*, 100 F.3d 53, 56-57 (7th Cir. 1996)).
More recently, the Eighth Circuit has advanced – persuasively,
in this court's view – a different interpretation.  *See In re
Pyatt*, 486 F.3d at 428-29.  Because the Appellees in this case
never possessed "property of the estate," however, the court
need not decide whether they are liable for its value.

322 F.3d 421 (6th Cir. 2003)).  Consistent with that definition, the provisions set forth in § 541(a)(3) permit the trustee to draw back into the bankruptcy estate that which has somehow made its way out.  *See Dunes Hotel Associates*, 245 B.R. at 504 ("[T]he inclusion of property recovered by the trustee pursuant to his avoidance powers in a separate definitional paragraph [*i.e.*, § 541(a)(3)] clearly reflects the congressional intent that such property is not to be considered property of the estate until it is recovered.") (quoting *In re Sanders*, 101 B.R. 303, 305 (Bankr.N.D.Fla. 1989)) (internal marks and footnote omitted); *In re Maxim Truck Co., Inc.*, 415 B.R. 346, 357 n. 4 (Bankr.S.D.Ind. 2009) ("the Trustee's remedy under § 542 for turnover . . . ripens upon a determination by the Court that the property in dispute is, in fact, property of the estate").

Among the sections referenced in § 541(a)(3) is § 550, which provides, subject to exceptions not relevant here:

> to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred or, if the court so orders, the value of such property, from –
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).   Among the provisions referenced in § 550, in turn, is § 549, entitled "Postpetition transactions."   That statute provides, in pertinent part, that "the trustee may avoid a transfer of the estate . . . that is not authorized under this title or by the court."   § 549(a).   Notably, for present purposes, § 549 requires that an "action or proceeding under this section may not be commenced after the earlier of . . . two years after the date of the transfer sought to be avoided[,] or . . . the time the case is closed or dismissed."  § 549(d).

In the legal context, the term "avoid" means "[t]o render void" or "to make void or of no effect; invalidate."   *In re Coleman*, 426 F.3d 719, 726 (4th Cir. 2005) (internal citations and marks omitted).   A "transfer" under the bankruptcy code is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."   § 101(54).   Like "property of the estate," the definition of "transfer" is broad in scope:

> Congress intended this definition to be all-inclusive and as broad as possible to encompass any surrender of an interest in property, whether the transfer is of legal title or of possession, custody or control. Senate Report No. 95-989, 95th Cong. 2d Sess. 26-27 (1978); House Rep. No. 95-595, 95th Cong. 1st Sess. 373 (1977), U.S.Code Cong. & Admin.News, 1978 p. 5787; See *In re Wey*, 78

> B.R.   892,   894   (C.D.Ill.   1987);   *In   [re]
> Lemley   Estate   Business   Trust*,   65   B.R.   185,
> 189   (Bkrtcy.N.D.Tex.[]   1986);   *In   [re]   Queen
> City   Grain,   Inc.*,   51   B.R.   722,   726
> (Bkrtcy.S.D.Ohio[]   1985).

*In re E-Tron Corp.*, 141 B.R. 49, 55 (Bankr.D.N.J. June 4, 1992)

(quoting *In re Carmel*, 92 B.R. 778, 780 (Bankr.N.D.Ill. 1988)).

It follows, then, that an interest in what was at some point after commencement of the bankruptcy case "property of the estate" may, without authorization, leave the estate, and that, pursuant to § 549(a), the trustee may seek to "make void" such a transfer.  If successful, an avoidance action would "recover" the property such that it would be drawn back into the estate, thereby becoming "property of the estate" under § 541(a)(3) *via* § 550(a).  *See In re Missouri River Sand & Gravel, Inc.*, 88 B.R. 1006, 1012 (Bankr.D.N.D. 1988) ("It is by virtue of section 550(a) and section 541(a)(3) that interests in property successfully recovered by the trustee are brought back into the estate.").  The statute of limitations provided in § 549(d), however, makes clear that any such action must be brought within two years of the date of transfer.  If an avoidance action is untimely or unsuccessful, the property in question is not property of the estate, so the turnover provision cannot be used to recover it.

This construction gives effect to the plain meaning of the relevant statutes, if not the plain language, and is entirely

consistent with the statutory scheme.   It is, moreover, amply supported by case law.  *See Vogel v. Russell Transfer, Inc.*, 852 F.2d 797, 800 (4th Cir. 1988) ("A trustee's power to avoid transfers of property of the estate that occur *after* commencement of the bankruptcy case is generally given in section 549.") (emphasis in original); *see also In re Pyatt*, 486 F.3d at 429 n. 4 ("11 U.S.C. § 549(a)(2)(A) . . . is further evidence that the § 542(a) turnover obligations are distinct from a trustee's rights.  For even though such a transfer is exempted from the turnover duty, the trustee nevertheless has the power to avoid the transfer"); *In re Knight*, 2006 WL 3147714, at *3 ("Section 549 is intended to be the exclusive power by which a postpetition transfer may be avoided.  Section 542(a) should not be interpreted or used in a manner that overlaps or conflicts with Section 549.") (citing *In re Pyatt*, 348 B.R. 783 (8th Cir.BAP 2006)); *In re Shuman*, 277 B.R. 638, 654 n. 8 (Bankr.E.D.Pa. 2001) ("decisions which have interpreted section 542(a) have held that this provision applies only to prepetition transfers or property which would become property of the estate upon recovery.  If a post-bankruptcy transfer is involved, then only section 549 applies.") (citing *In re Thornton's Millwork, Inc.*, 209 B.R. 645, 647 (Bankr.M.D.Pa. 1997); *In re 31-33 Corp.*, 100 B.R. 744, 747-48 (Bankr.E.D.Pa. 1989)).

*Deckelbaum*, the case relied upon by the bankruptcy court in this case, is not to the contrary.  There, a chapter 11 debtor-in-possession paid, post-petition, approximately $483,000 in legal fees to a law firm.  A trustee was subsequently appointed and brought an adversary proceeding against successor law firms to recover the fees, claiming this was "property of the bankruptcy estate."  *Deckelbaum*, 275 B.R. at 740.  The trustee alleged, *inter alia*, that the money at issue was subject to turnover under § 542(a) and avoidance under § 549.  In finding that "section 542 is [] an inappropriate means for Plaintiff's attempt to recover the post-petition legal fees," *id.* at 741, Judge Nickerson explained:

> Courts have concluded that section 542 provides for the turnover of pre-petition transfers, while section 549 is the appropriate means to attack post-petition transfers. *See, e.g., Vogel* [852 F.2d at 800]("trustee's power to avoid transfers of property of the estate that occur after commencement of a bankruptcy case is generally given in section 549"); *In re 31-33 Corp.*, 100 B.R. [at 747] ("§ 549 appears to be the sole provision addressing avoiding powers of the trustee to avoid or set aside post-petition transfers"); *Miller v. Lane*, 167 B.R. 729 (Bankr.D.Mass. 1994). *But see In re Shepherd*, 12 B.R. 151, 153-54 (E.D.Pa. 1981) (suggesting that post-petition transfers may be attacked under either § 542 or § 549).

> Several policy reasons support the confinement of actions based on post-petition transfers to section 549, rather than section 542. For example, if both

> section 542 and 549 were available to avoid
> post-petition transfers, the statute of
> limitations contained within § 549(d) would
> be rendered meaningless, since a trustee who
> is time-barred by § 549(d) could merely
> invoke § 542. *See In re 31-33 Corp.*, 100
> B.R. at 747-48; *Burtch v. Hydraquip, Inc.*,
> 227 B.R. 244, 260 (Bankr.E.D.Pa.1998).

*Id.* at 741.

In arguing that *Deckelbaum* was wrongly decided, Appellant initially mischaracterizes the holding as being that "§ 542 does not apply to cases where the defendant received property of the estate after the bankruptcy petition was filed." (ECF No. 4, at 7). In fact, what *Deckelbaum* says is that § 542 does not apply to cases where the defendant received *a transfer* of property after the bankruptcy petition was filed. Indeed, to the extent that a transfer occurred, the property in question could not be fairly characterized as property of the estate, and thus, could not be subject to turnover. To be certain, property of the estate may be received by a defendant (most often the debtor), post-petition, without a transfer having occurred. In such cases, the property, or its value, is subject to a turnover order to the extent that the debtor had an interest at the time the bankruptcy case commenced. *See, e.g., In re Shearin*, 224 F.3d at 356-57 (holding that the portion of a year-end partnership distribution attributable to pre-petition work, but distributed post-petition, was subject to turnover pursuant to §

30

542(a)).   A "transfer," on the other hand, involves "disposing of or parting with property or with an interest in property[.]" § 101(54).   In the context of a pre-petition transfer, the trustee may seek avoidance of a preferential transfer under § 547 and of a fraudulent transfer under § 548.   With respect to post-petition transfers, "'[t]he intent of the parties effecting the transfer is irrelevant,'" *In re Brooks-Hamilton*, 348 B.R. 512, 523 (Bankr.N.D.Cal. 2006) (quoting *In re Dreiling*, 233 B.R. 848, 876 (Bankr.D.Col. 1999)), but § 549 provides the exclusive means for bringing such property back into the estate.

Appellant further argues that *Deckelbaum* is inconsistent with the text of § 542, which makes clear "that the duty to turn over property of the estate applies to anyone who is in possession, custody, or control of such property 'during the case[.]'" (ECF No. 4, at 8).   What he fails to recognize is that, absent a successful avoidance action, property that has been transferred post-petition is not property of the estate.   According to Appellant, "[t]he legislative history of § 542(a) shows that the language enacted by Congress represented a conscious decision not to limit the duties and liabilities imposed by that section to cases where the defendant possessed the property when the petition was filed." (*Id*. at 10). *Deckelbaum*, however, is not is disharmony with this statement.

Finally, Appellant's attempt to distinguish the cases relied upon in *Deckelbaum* is unpersuasive.  He argues that *Vogel* "did not involve § 542 or even cite it," but "dealt with a trustee's efforts to avoid the grant of a security interest under 11 U.S.C. § 547 on the grounds that it constituted a preference." (*Id*. at 12).  *Vogel*, however, was cited by Judge Nickerson, just as it is cited in this opinion, for the proposition that § 549 generally governs post-petition transfers of property.  *See Vogel*, 852 F.2d at 800.  Appellant argues that the court in *In re 31-33 Corp.* "erroneously relied on portions of § 542(a)'s legislative history that related to the provision as it was originally written rather than as it was subsequently amended," *i.e.*, to include the "during the case" language. (ECF No. 4, at 12).  Be that as it may, the property at issue in that case was unauthorized post-petition payments of compensation to professionals, which the court found to be post-petition transfers subject to avoidance under § 549.  *See In re 31-33 Corp.*, 100 B.R. at 748.[11]  According to Appellant, *In re Miller*, 167 B.R. 729, "held that because the defendant obtained the

_____

[11] To the extent that the court found that § 542(a) "is properly interpreted as being confined to actions against parties 'holding property of the estate *on the date of the filing of the petition*,'" *In re 31-33 Corp.*, 100 B.R. at 747 (emphasis in original), the court agrees with Appellant that this construction is too narrow.  Nevertheless, insofar as the property involved was clearly transferred post-petition, the proper result obtained.

property at issue postpetition, recovery under § 542(a) was unavailable because an avoidance action under § 549 was time-barred." (ECF No. 4, at 13). But this is just another way of saying that where a post-petition transfer of property has occurred, the transfer must be avoided under § 549 before § 542 could have any application. It follows logically that where a transfer cannot be avoided because it is time-barred, the turnover provision could have no application. Thus, although § 542 does not include a statute of limitations, it is effectively subject to the limitations period provided in § 549(d) with respect to property transferred post-petition that might have otherwise been drawn back into the estate. *See generally In re Sanabria*, Bankruptcy No. 02-34621 (DHS), Adversary No. 06-01337 (DHS), 2007 WL 2746802, at *4-5 (Bankr.D.N.J. Sept. 19, 2007) (finding turnover barred by laches where claim was time-barred under § 549).

In sum, the second premise is also true: Property that has been transferred is not property of the estate. More specifically, property that the estate "recovers," under § 550, becomes "property of the estate," under § 541(a)(3), only after a transfer has been "avoided" under § 549(a). Where a post-petition transfer is not avoided, however, it is not "property of the estate," and because § 542(a) entitles the trustee to possess only property of the estate, the transferred property

may not be recovered by way of the turnover provision. Despite
Appellant's arguments to the contrary, *Deckelbaum* is entirely
consistent with this construction and was correctly decided.

### C. The Property at Issue Was Transferred

Appellant insists that "[e]ven if one assumes that
*Deckelbaum* was correct, its holding should not be applied here
because the counts at issue here allege that [Appellees] took
possession of the funds, not as transferees against whom an
avoidance action under § 549 could be brought, but as conduits
who are subject to the turnover obligation under § 542(a)."
(ECF No. 4, at 17) (footnote omitted). "The rule in the Fourth
Circuit," he argues, "is that receipt of estate property,
without more, is not enough to render the recipient a
transferee." (*Id.* at 14). "Rather, a recipient is a transferee
only if he has legal dominion and control over the property such
that he can use it for his own benefit." (*Id.*). Because he
alleges in the complaint that "the Dahan Defendants obtained
possession of estate property as conduits," Appellant contends
that Appellees "are not transferees." (*Id.* at 15).

Notably implicit in this argument is recognition of the
third premise set forth by the court, *i.e.*, that if the property
in question was transferred, then it could not be subject to
turnover. It is clear, however, based on the allegations in the
complaint that the property Appellant seeks to recover was

34

transferred on multiple occasions.   Even assuming, *arguendo*, that the vast majority of the purchase funds for the properties at issue constituted "property of the estate" under an alter ego theory, three of the properties themselves – Parkway, Kenhowe, and Sherwood – were actually titled in the name of Appellees Rokama and Maia.   Appellant observes in passing that the Fourth Circuit has adopted the "dominion and control" test established by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988), to determine whether a transfer has occurred, holding that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes."   *See In re Southeast Hotel Properties Ltd. Partnership*, 99 F.3d 151, 154-55 (4th Cir. 1996).   It strains credulity to suggest that an entity holding title to property does not exercise "dominion and control" over it, and Appellant does not bother to explain how this could be the case.

As to the other amounts allegedly received by Appellees as distributions of proceeds from the sale of properties, $150,000 from the sale of the Bay property was used to pay down a line of credit from which the Dahans had made payments to Debtor.   There is no allegation that the Dahans actually possessed these funds and, even if they did, the complaint actually alleges that this was re-payment of a prior loan to Debtor.   (ECF No. 6-1 ¶ 255).

Appellant further alleges in the complaint that $56,000 from the sale of Sundown was distributed to Maia.  There is no indication that Maia was not free to do with this money as it wished, nor does Appellant make clear exactly how it was a "conduit," rather than a "transferee."  Similarly, it is unclear how the $15,000 distribution from the sale of Milbern to Rokama was not a transfer.  In each case, Debtor appears to have "part[ed] with property or with an interest in property," which is the definition of a "transfer" pursuant to § 101(54).

Because the allegations in the complaint demonstrate that the property in question was transferred, Appellant's characterization of Appellees as "conduits" is at best a factual allegation devoid of reference to actual events, and is not controlling.  Rather, as transferred property, it cannot have been obtained by the trustee pursuant to the turnover provision of § 542(a).

**IV.  Conclusion**

For the foregoing reasons, the order of the bankruptcy court partially dismissing the complaint will be affirmed.  A separate order will follow.

```
_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
```