IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE: MINH VU HOANG and       :
THANH HOANG
_____       :
GARY A. ROSEN, Trustee
      Appellant                :

      v.                       :      Civil Action No. DKC 11-2320

DAVID DAHAN, et al.            :
      Appellees
                               :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this bankruptcy appeal is a motion to alter or amend judgment filed by Appellant Gary A. Rosen (ECF No. 13); a motion to strike filed by Appellees David Dahan, Sarit Dahan, Karin Dahan, Maia, LLC, Rakoma, LLC, and Raymonde, LLC (ECF No. 16); and Appellant's motion for retroactive extension of time in which to file a motion for rehearing (ECF No. 19).  The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary.  For the reasons that follow, Appellees' motion to strike will be denied; Appellant's motion for extension will be granted; and Appellant's motion for rehearing will be denied.

I.   **Background**

On March 10, 2011, Appellant Gary A. Rosen, the chapter 7 trustee for the jointly administered bankruptcy estates of Minh

Vu Hoang and Thanh Hoang, commenced the adversary proceeding from which this appeal arises against Appellees David Dahan, Sarit Dahan, Karin Dahan, Maia, LLC, Rokama, LLC, and Raymonde, LLC.[1]  As relevant here, the complaint relates to six parcels of real property that were purchased, post-petition, by sham business entities under the control of Minh Vu Hoang ("Debtor") with assets fraudulently concealed from the bankruptcy estate.[2] The properties were then either sold or refinanced – in some cases, with the assistance of Appellees – and the proceeds were distributed to Appellees, among others.  Appellant's amended complaint sought, *inter alia*, turnover pursuant to 11 U.S.C. § 542 and, in the alternative, avoidance of post-petition transfers pursuant to 11 U.S.C. § 549.[3]

Appellees filed a motion to dismiss all claims with respect to the six properties, arguing that "Section 542 is only available [to] obtain turnover of assets that were in the hands

---

[1] The corporate appellees are allegedly controlled by David Dahan.  Sarit Dahan is David's wife; her liability is premised upon the deposit of proceeds into one or more bank accounts she shared with her husband.  Karin Dahan is the daughter of David and Sarit.  With respect to the six properties at issue in this appeal, the complaint contains no allegations relating to Karin.

[2] The complaint contains allegations with respect to nine properties; only six are at issue in the instant appeal.

[3] All further references to the bankruptcy code will be by section number only.  These sections are all found in Title 11 of the United States Code.

of a defendant pre-petition . . . [and] does not apply to assets that came into the hands of [Appellees] post-petition." (ECF No. 6-2, at 2 (emphasis removed)).[4] Appellees relied principally on *Deckelbaum v. Cooter, Mangold, Tompert & Chapman, PLLC*, 275 B.R. 737 (D.Md. 2001). In that case, Judge Nickerson held, in relevant part, that § 542 was "an inappropriate means" for a bankruptcy trustee to recover post-petition transfers, which could only be avoided pursuant to § 549, reasoning that "if both section 542 and 549 were available to avoid post-petition transfers, the statute of limitations contained within § 549(d) would be rendered meaningless[.]" *Deckelbaum*, 275 B.R. at 741. Appellees argued that because the property in question was transferred post-petition, the turnover provision was unavailable to the trustee, and because the two-year statute of limitations under § 549(d) had expired, Appellant could not state a claim for relief.

---

[4] At a hearing on the motion to dismiss, Appellees clarified their position:

> If the Dahan[s] had possession of the property on the date of filing [of the bankruptcy petition], then 549 would not apply because there is not a post-petition transaction. . . . If, on the other hand, there has been a transfer during the case of property that was the Debtor's property to a third party and it is a post-petition transfer, that is where 549 comes into play and 542 does not.

(ECF No. 6-13, at 26).

In opposing the motion, Appellant conceded that his § 549 claims were time-barred, but urged that the plain language and legislative history of § 542 supported that "any entity, other than a custodian, is required to deliver property of the estate to the trustee or debtor in possession whenever such property is acquired by the entity during the case." (ECF No. 6-5, at 13). Arguing that Appellees were in possession of estate property during the case, Appellant maintained that he had a right to turnover of the proceeds in question and that, to the extent it held otherwise, *Deckelbaum* was wrongly decided. Notably, for present purposes, Appellant asserted an alternative theory in a footnote within his opposition papers: "the Dahan Defendants obtained possession of estate property as conduits. . . . By definition, therefore, they are not transferees . . . [and] there are no postpetition transfers that would need to be avoided under § 549 as a prerequisite of imposing liability under § 542(a)." (*Id.* at 14, n. 25).

A hearing was held before United States Bankruptcy Judge Thomas J. Catliota on June 15, 2011. In response to a question by the court regarding the interplay between § 542 and the statute of limitations of § 549(d), Appellant's counsel stated:

> If one is merely a conduit, meaning that one is holding [property] for the benefit of the debtor and is just a straw party or nominee or, you know, in the extreme case, the Federal Express messenger

4

> or merely the bank account into which money
> is deposited, you know, in that case the
> bank.  The . . . bank typically is not a
> transferee.
>
> . . . .
>
> So, 542 covers the case where an
> intermediar[y] or conduit has possession of
> the property and that is the case that would
> not come within 549.  Judge [Easterbrook]
> made that distinction in the Seventh Circuit
> case.  I believe it is the one we cited . .
> . in our brief in [f]ootnote 25, [*Bonded
> Financial Services, Inc. v. European
> American Bank*, 838 F.2d 890 (7th Cir. 1988)],
> if I am not mistaken.
>
> . . . .
>
> We have alleged in the complaint that
> the Dahan Defendants were conduits and
> intermediaries, [and] the sufficiency of
> that allegation has not been challenged[,]
> so . . . on that theory, that is why we do
> not need to go under 549 and that is why
> this is property that the Trustee is
> entitled to use, sell or lease.

(ECF No. 6-13, at 33-34).

At the conclusion of the hearing, Judge Catliota granted
Appellees' motion to dismiss, indicating that he would
separately issue a memorandum and order.  In his subsequent
opinion, he expressed reservations with regard to the outcome:

> This Court will follow *Deckelbaum* and
> dismiss Plaintiff's § 542 claims. However,
> if the Court were writing on a clean slate,
> it might well reach a different result. The
> *Deckelbaum* court focused on the structure of
> the Bankruptcy Code, and in particular, the
> interplay between § 542 and § 549. But the
> plain language of § 542 does not limit its

> application to recovery of property that is
> in a defendant's possession only as of the
> petition date. *See United States v. Ron Pair
> Enters.*, 489 U.S. 235, 109 S.Ct. 1026, 103
> L.Ed.2d 290 (1989) (courts should interpret
> a statute in accordance with its plain
> meaning). To the contrary, § 542 recovery
> can be sought from "an entity . . . in
> possession, custody, or control *during* the
> case of property. . . ." 11 U.S.C. § 542
> (emphasis added). The specific application
> of the section to property that is in the
> possession, custody or control of a
> defendant "during the case" would seem
> contrary to a determination that it only
> applies to pre-petition transfers.

*In re Minh Vu Hoang*, 452 B.R. 902, 906-07 (Bankr.D.Md. 2011)
(internal footnote omitted; emphasis in original). In the
factual recitation of the decision, the bankruptcy court
appeared to accept that Appellees were Debtor's "conduits or
intermediaries" with respect to the proceeds from the sale or
refinancing of the properties at issue, *id.* at 905, but it did
not specifically address the implications of this finding with
respect to whether the money could be subject to turnover
pursuant to § 542(a).

Appellant filed a timely motion for leave to appeal and
concomitantly moved to stay the proceedings in the adversary
case pending resolution of the prospective appeal. Appellees
did not oppose those motions, and both were subsequently
granted.

In his appellate brief, Appellant argued (1) that "*Deckelbaum* was wrongly decided because § 542(a) is not limited to estate property in the defendants' possession, custody, or control when the petition was filed," and (2) that "[e]ven if *Deckelbaum*'s holding were correct, it would not apply here because the counts at issue allege that the Dahan defendants acquired property of the estate as conduits, not transferees." (ECF No. 4, at 7, 17). With respect to the second argument, Appellant asserted:

> [P]ersons who receive estate property as conduits or intermediaries acting on behalf of the debtor are not recipients of a transfer, and therefore cannot be sued under § 549. And as we have also noted, the amended complaint alleges (in the cou[n]ts at issue) that the Dahan Defendants acted as conduits. Thus, even if *Deckelbaum* were correct, it should not be read to require the dismissal of claims, such as those at issue here, in which the defendants are alleged to have acted as conduits rather than transferees.

(*Id.* at 22).

In response, Appellees argued that the conduit/intermediary argument was "never raised . . . in the Bankruptcy Court," and that, even if it had been, Appellant's turnover claims "properly should have been brought against the Debtors, rather than [Appellees][.]" (ECF No. 9, at 13, 14). In reply, Appellant cited numerous instances in which the issue was raised in his amended complaint, opposition to the motion to dismiss, and at

the motions hearing, but did not address Appellees' contention that they were not a proper party. (ECF No. 10, at 11-15).

On March 9, 2012, this court issued a memorandum opinion and order affirming the decision of the bankruptcy court. *See In re Minh Vu Hoang*, 469 B.R. 606 (D.Md. 2012). The court determined (1) that the turnover provision, § 542(a), entitles the trustee to possession of "property of the estate," as that term is defined in § 541(a); (2) that property transferred post-petition may lose its status as property of the estate unless or until such transfer is avoided by the trustee pursuant to § 549, in which case the property is drawn back into the estate pursuant to §§ 541(a)(3) and 550; and (3) that because the property at issue in this case was transferred, and the transfers were not avoided, it was not property of the estate and, therefore, could not be recovered pursuant to the turnover provision.

In addressing Appellant's second issue on appeal, the court explained:

> It is clear . . . based on the allegations in the complaint that the property Appellant seeks to recover was transferred on multiple occasions. Even assuming, *arguendo*, that the vast majority of the purchase funds for the properties at issue constituted "property of the estate" under an alter ego theory, three of the properties themselves . . . were actually titled in the name of Appellees Rokama and Maia. Appellant observes in passing that the Fourth Circuit has adopted

the "dominion and control" test established by the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 893 (7th Cir. 1988), to determine whether a transfer has occurred, holding that "the minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes." *See In re Southeast Hotel Properties Ltd. Partnership*, 99 F.3d 151, 154-55 (4th Cir. 1996). It strains credulity to suggest that an entity holding title to property does not exercise "dominion and control" over it, and Appellant does not bother to explain how this could be the case.

As to the other amounts allegedly received by Appellees as distributions of proceeds from the sale of properties, $150,000 from the sale of the Bay property was used to pay down a line of credit from which the Dahans had made payments to Debtor. There is no allegation that the Dahans actually possessed these funds and, even if they did, the complaint actually alleges that this was re-payment of a prior loan to Debtor. (ECF No. 6-1 ¶ 255).[5] Appellant further alleges in the complaint that $56,000 from the sale of [the Sundown property] was distributed to Maia. There is no indication that Maia was not free to do with this money as it wished, nor does Appellant make clear exactly how it was a "conduit," rather than a "transferee." Similarly, it is unclear how the $15,000 distribution from the sale of [the Milbern property] to Rokama was not a transfer. In each case, Debtor appears to have "part[ed] with property or with an interest in property," which is the definition of a "transfer" pursuant to § 101(54).

---

[5] Appellant does not challenge the decision with respect to the Bay property in his motion for rehearing.

> Because the allegations in the
> complaint demonstrate that the property in
> question was transferred, Appellant's
> characterization of Appellees as "conduits"
> is at best a factual allegation devoid of
> reference to actual events, and is not
> controlling. Rather, as transferred
> property, it cannot have been obtained by
> the trustee pursuant to the turnover
> provision of § 542(a).

*In re Minh Vu Hoang*, 469 B.R. at 622-23.

On April 6, 2012, Appellant filed the pending motion to alter or amend judgment pursuant to Fed.R.Civ.P. 59(e). (ECF No. 13). Appellant asks the court to reconsider its ruling with respect to five of the six properties at issue based on "two points that the decision turned on, neither of which was ever raised by [Appellees in the bankruptcy court]":

> First, the Court held that § 542(a) of
> the Bankruptcy Code (the "turnover"
> provision) did not apply to the property at
> issue here because that property was
> transferred after Minh Vu Hoang filed for
> bankruptcy and therefore was no longer
> property of the estate. But the relevant
> question is not simply whether there was a
> transfer of *something* by *somebody*, but
> whether there was a transfer of *the estate's
> interest* by *someone with power to transfer
> that interest*. On the facts alleged in the
> amended complaint, there was no transfer of
> the estate's interest: the purported
> transferors did not represent the estate and
> they had no power to alienate the estate's
> interest in the property.

> Second, the Court held that the
> defendants received the property at issue as
> transferees rather than conduits. That
> decision was based on an error in applying

10

>the "dominion and control" test, which
>governs the determination whether a party
>who has received property of the estate did
>so as a transferee. In addition, the Court
>did not take account of the extent of and
>detail of the amended complaint's factual
>allegations supporting the conclusion that
>the defendants acted as conduits.

(ECF No. 13-1, at 1 (emphasis in original)).

In response, Appellees moved to strike, arguing that the motion to alter or amend is only cognizable as a motion for rehearing pursuant to Federal Rule of Bankruptcy Procedure 8015, which must be "filed within 14 days after entry of the judgment of the district court or the bankruptcy appellate panel." (ECF No. 16 ¶ 7 (quoting Fed.R.Bankr.P. 8015)). Observing that Appellant filed his motion twenty-eight days after the appeal was decided, Appellees contend that it "may not be considered by the [c]ourt." (*Id*. at ¶ 16). On the same date, Appellees separately filed a "limited response to motion to alter or amend judgment," asserting that Appellant's claim that the property was never transferred "ignores the fact and reality that Maryland is a title state"; thus, "unlike the cases cited by Appellant which involve *personal* property and not real estate, there were actually transfers as evidenced in the land records – and those transfers were arguably subject to the trustee's

powers to avoid each such transfer." (ECF No. 17 ¶ 3 (emphasis in original)).[6]

On April 30, Appellant filed a "cross-motion to retroactively extend the deadline for rehearing motions and to accept his motion to alter or amend judgment as a late-filed motion for rehearing" and supporting memorandum. (ECF No. 19).[7] In that motion, Appellant concedes that the governing rule is Fed.R.Bankr.P. 8015 and that his prior motion was untimely under that rule, but argues that the court has discretion to consider the motion and that it should do so in this case. Appellees have opposed the motion for retroactive extension of time (ECF No. 20), and Appellant has filed papers in reply (ECF No. 21).

## II.  Analysis

### A.  Motion to Strike

Appellees do not indicate the legal basis of their motion to strike, but the only candidate is Federal Rule of Civil Procedure 12(f), which applies to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b).  Rule 12(f) allows the court to strike certain matters "from a pleading."

---

[6]  In both their motion to strike and limited response, Appellees purportedly "reserve the right to file a detailed substantive response" to Appellant's motion to alter or amend "at a later time," if necessary. (ECF No. 16 ¶ 23; ECF No. 17 ¶ 4).

[7]  An identical memorandum was separately docketed as a response in opposition to the motion to strike. (ECF No. 18).

Appellees' motion does not seek to strike any portion of a
pleading; rather, it aims to strike Appellant's motion to alter
or amend judgment in its entirety.   Because there is "no basis
in the Federal Rules" for doing so, *Tepeyac v. Montgomery Cnty*.,
779 F.Supp.2d 456, 460 (D.Md. 2011), Appellees' motion to strike
will be denied.

    **B.    Motion for Retroactive Extension of Time**

    As noted, the parties now agree that Federal Rule of
Bankruptcy Procedure 8015, rather than Federal Rule of Civil
Procedure 59(e), governs reconsideration in this context.   That
rule provides:

> Unless the district court or the bankruptcy
> appellate panel by local rule or by court
> order otherwise provides, a motion for
> rehearing may be filed within 14 days after
> entry of the judgment of the district court
> or the bankruptcy appellate panel.   If a
> timely motion for rehearing is filed, the
> time for appeal to the court of appeals for
> all parties shall run from the entry of the
> order denying rehearing or the entry of the
> subsequent judgment.

Fed.R.Bankr.P. 8015; *see also In re Zegeye*, Civ. No. DKC 04-
1387, 2005 WL 544763, at *1 (D.Md. Mar. 4, 2005) ("When the
district court is acting as an appellate court in a bankruptcy
case, Rule 8015 provides the sole mechanism for filing a motion
for rehearing" (citing *English-Speaking Union v. Johnson*, 353
F.3d 1013, 1019 (D.C. Cir. 2004)).

Appellant concedes that he failed to file his motion within fourteen days, but argues that "the [c]ourt has the power to extend the deadline for rehearing motions under rule 8015 and to accept the Trustee's motion to alter or amend as a late-filed motion for rehearing." (ECF No. 19-1, at 1). Appellant points to the fact that Rule 8015 itself states that the fourteen-day time limit applies unless a "local rule or [] court order otherwise provides," and that Fed.R.Bankr.P. 8019 permits the court, "[i]n the interest of expediting decision or for other cause," to "suspend the requirements or provisions of the rules in Part VIII." According to Appellant, the court should exercise its discretion to consider the motion because (1) the decision below "was based on issues that had never been raised by the appellees in the bankruptcy court or in this court, and that therefore had never been addressed by any of the parties"; (2) the court "departed from appropriate bankruptcy procedure" by "decid[ing] the appeal without hearing oral argument"; (3) "it would be helpful for the court of appeals to have the benefit of this [c]ourt's views on the arguments raised in [the] motion to alter or amend"; and (4) "the appellees will suffer no prejudice." (ECF No. 19-1, at 3-5).[8]

_____

[8] Appellant's argument that the decision on appeal was based on issues not raised below is curious. The court was asked to resolve a dispute regarding the interplay between the turnover provision of § 542(a) and the post-petition avoidance provision

Extensions of time in this context are governed by Fed.R.Bankr.P. 9006(b)(1). *See Matter of Eichelberger*, 943 F.2d 536, 538-39 (5th Cir. 1991); *In re Solis*, No. 95 Civ. 0356 (JSM), 1995 WL 311781, at *1 (S.D.N.Y. May 19, 1995). That rule provides, absent exceptions not relevant here, that "when an act is required or allowed to be done at or within a specified period by these rules . . . the court may at any time in its discretion . . . on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Fed.R.Bankr.P. 9006(b)(1). As the Supreme Court explained in *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993), the excusable neglect determination is "an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of

---

of § 549, and, more specifically, the propriety of *Deckelbaum*'s holding that property transferred post-petition could not be subject to turnover. The provisions in question are loaded with concepts drawn from the broader scheme of the bankruptcy code such that they cannot be properly read in isolation. Having asked the court to engage in statutory construction, Appellant should not be heard to complain that it did so.

Equally unmoving is his argument that the court "departed from appropriate bankruptcy procedure" by declining to hold oral argument. Pursuant to Bankruptcy Rule 8012, "[o]ral argument will not be allowed if . . . the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." The court expressly found that was the case here. *See In re Minh Vu Hoang*, 469 B.R. at 608.

prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."

Application of these factors here militates in favor of finding excusable neglect.  Believing that Rule 59(e) governed the motion, Appellant timely filed it under that provision. After Appellees observed that Bankruptcy Rule 8015 was the proper vehicle, Appellant's counsel promptly acknowledged his error and requested appropriate relief.  He unquestionably acted in good faith.  Moreover, there is no discernible prejudice to Appellees attributable to the two-week delay in filing. Appellees' argument that the late filing resulted in undue delay in the adversary proceeding is undermined by the fact that they consented to a stay in the bankruptcy court pending resolution of the case on appeal.  Accordingly, the court finds excusable neglect for the late filing and will consider Appellant's motion as a motion for rehearing pursuant to Fed.R.Bankr.P. 8015.

### C.   Motion for Rehearing

The United States District Court for the District of South Carolina identified the proper standard in considering a motion for rehearing in *Baumhaft v. McGuffin*, C/A No. 4:06-CV-3617-RBH, 2007 WL 3119611, at *1 (D.S.C. Oct. 22, 2007):

> Fed. R. Bankr.P. 8015 provides that "a
> motion for rehearing may be filed within
> 1[4] days after entry of the judgment of the
> district court . . . " "The purpose of Rule
> 8015 is to provide recourse to a party . . .
> after a district court . . . has overlooked
> or misapprehended some point of law or
> fact." 10 Collier on Bankr.P. 8015.01 (15th
> ed. rev. 2004). Although Rule 8015 does not
> specify the standard for ruling on a
> petition for rehearing, it appears that most
> courts have looked by analogy to Fed. R.
> App. P. 40. *See* 9 Collier on Bankr.P.
> 8015.04 at 8015-4 (collecting cases).
> Appellate Rule 40 provides that petitions
> for rehearing must include points which the
> court allegedly overlooked or
> misapprehended. Petitions for rehearing
> should not simply reargue the plaintiff's
> case or assert new grounds. *See Sierra Club
> v. Hodel*, 848 F.2d 1068, 1100-01 (10th Cir.
> 1988).

At base, motions for rehearing are "designed to ensure that the appellate court properly considered all relevant information in rendering its decision." *In re Zegeye*, 2005 WL 544763, at *1 (citing *In re Hessco Industries, Inc.*, 295 B.R. 372, 375 (B.A.P. 9th Cir. 2003)).

As noted previously, Appellant argues that the court took wrong turns at two points. He initially complains that the determination that the property in question was transferred failed to account for the fact that, under common law property principles, Debtor had no authority to effect the transfers in the first place. Thus, according to Appellant, the purported transfers were void, the property never left the estate, and it

was subject to turnover.  Appellant further contends that the court's finding that Appellees received the property as transferees, rather than conduits, was "mistaken" due to a misapplication of "the dominion-and-control test."  (ECF No. 13-1, at 9).

The first argument was not raised in the bankruptcy court or on appeal.  While Appellant did assert that the conveyances at issue were not transfers, he reasoned that this was because Appellees took possession as "conduits" or "intermediaries" of Debtor, not that the purported transfers were nullities. Moreover, his argument in the instant motion relies on the common law principle that "one cannot transfer more than one actually has" (*Id.* at 6), but the bankruptcy cases he cites in support are based on application of the automatic stay provision of § 362(a).  *See In re Kemp*, 52 F.3d 546, 553 & n. 22 (5th Cir. 1995) (citing § 362(a)(3) and (6) as the basis of its finding that the debtor "had no legal power to transfer the funds" at issue); *In re DonPedro*, No. 03-46671 TK, 04-4120 AT, 2004 WL 3187072, at *1 (Bankr.N.D.Cal. Nov. 30, 2004) ("the execution of the Deeds of Trust violated 11 U.S.C. § 362(a)(3) and thus were void").[9]  Many courts have held that "violations of the automatic

---

[9] A third case, *In re Grotjohn*, 376 B.R. 496, 499 (N.D.Tex. 2007), relied upon § 323(a) (establishing the role of the trustee as "the representative of the estate") and § 363(b)(1) (creating the trustee's power to "use, sell, or lease . . .

stay are void, not voidable," *In re Schwartz*, 954 F.2d 569, 571 (9th Cir. 1992), and the relationship between §§ 362 and 549 is the subject of considerable debate, *see* David Gray Carlson, *Bankruptcy's Acephalous Moment: Postpetition Transfers Under the Bankruptcy Code*, 21 Emory Bankr. Dev. J. 113 (2004).   The instant record, however, contains no reference whatsoever to the automatic stay or § 362.   Indeed, the provision potentially in conflict with § 549 in this case was § 542, not § 362.   Because the argument Appellant now seeks to raise was not presented on appeal or in the bankruptcy court, it may not be considered in the context of the instant motion.   *See In re Zegeye*, 2005 WL 544763, at *2 (a motion for rehearing "is not a means . . . to assert new grounds for relief").

    With regard to Appellant's second claim – *i.e.*, that the court erred in rejecting his argument that no transfers occurred because Appellees were "conduits," rather than "tranferees" – it is unclear what it is the court is alleged to have overlooked. Regarding the "dominion and control" test for determining whether a transfer has occurred, the court explained that "the minimum requirement of status as a 'transferee' is . . . the right to put the [property] to one's own purposes."   *In re Minh Vu Hoang*, 469 B.R. at 622 (quoting *Bonded Financial*, 838 F.2d at

_____

property of the estate) in holding, "[o]nly the Trustee . . . had the power to sell property of the estate" and "[a] debtor has no power to transfer estate property."

893).   It then found that it "strain[ed] credulity to suggest that an entity holding title to property does not exercise 'dominion and control' over it[.]"   *In re Minh Vu Hoang*, 469 B.R. at 622.   Appellant now argues that "merely having title to the property is not dispositive" because "one may hold title to property as an agent, trustee, or nominee for someone else." (ECF No. 13-1, at 10).   While this appears to be indistinguishable from the argument that was considered and rejected on appeal, it also misses the point.   The relevant question was whether the transactions at issue were "transfers," as that term is defined in the bankruptcy context.   As explained in the prior opinion, "[t]he term 'transfer'" is defined by § 101(54) as "mean[ing] . . . each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with . . . property[] or . . . an interest in property."   The transactions at issue in this case clearly fell within that definition, just as they satisfy the "dominion and control" test because the holder of title to real property has the ability to put the property to his own use.   Appellant does not address these points in his motion.   Rather, he essentially restates the same argument that was considered and rejected prevously.   A motion for rehearing, however, "is not a means by which to reargue a party's case."   *In re Zegeye*, 2005 WL 544763, at *2.   To the extent that Appellant's argument is

distinguishable, the court is not persuaded that it "overlooked or misapprehended" any significant point in the prior opinion. Accordingly, Appellant's motion for rehearing will be denied.[10]

## III. Conclusion

For the foregoing reasons, Appellees' motion to strike will be denied, Appellant's motion for extension will be granted, and Appellant's motion for rehearing will be denied.   A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[10] Appellant also asks the court to grant leave to file a second amended complaint, arguing that because "the grounds on which this [c]ourt based its decision were not raised in the bankruptcy court," he "was never put on notice as to any potential insufficiency" in his amended complaint; therefore, "[i]t is only fair that he be allowed an opportunity to cure whatever deficiencies the [c]ourt has found." (ECF No. 13-1, at 18).  The deficiencies in the complaint are not amenable to cure by amendment, however.  Typically, leave to amend should be freely given "when justice so requires," Fed.R.Civ.P. 15(a)(2); Fed.R.Bankr.P. 7015, and should be denied "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile," *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009).  Because amendment in this case would be futile, Appellant's request will be denied.